## SEMINOLE SUPPLY CO. et al. v. SEMINOLE REFINING CO.

No. 24776. April 30, 1935.

Rehearing Denied June 18, 1935.

Tom Huser and R. J. Roberts, for plaintiffs in error.

Joe B. Crockett, for defendant in error.

PHELPS, J. On May 22, 1930, U. V. Darland, an officer of Seminole Refining Company, a corporation, made a return to the county assessor of Seminole county of certain personal property for assessment, describing it as "Oil blending plant equipment and supplies $5,000 located 2 Mi E of Seminole on Highway #3".

Taxes not having been paid on this property, the county treasurer on September 27, 1932, issued an alias tax warrant and placed the same in the hands of the sheriff of Sem-

inole county, who took charge of and, upon ten days notice, sold, on October 10, 1932, to plaintiff in error at tax sale the property described as follows:

"1 steel tank 1 stack of signs, 1 Kahley electric plant model K p67, 11 storage tanks, 1 water tank, 1 boiler, 1 gasoline engine, and water pump, 1 steel pan, all pipe lines and fittings, all wrenches and dies, all barrels, and all oil in storage, all other articles too numerous to mention, belonging to Seminole Refining Co."

—for which he issued a bill of sale dated October 14, 1932, reciting a consideration of $175 paid for the property at such sale.

On October 20, 1932, the Seminole Refining Company, defendant in error here, filed its petition in the superior court of Seminole county against Seminole Supply Company, the purchaser, the sheriff, and county treasurer, alleging such sale was void, that a portion of the property sold as personal property was real estate belonging to said corporation, tendered the amount of taxes with interest, penalties, and costs into court and prayed for restraining order and that the purported sale be set aside.

The defendant, Seminole Supply Company, filed its answer, denying generally the allegations of plaintiff's petition, demanding strict proof and praying that it be dismissed with costs. The case was tried to the court and judgment rendered in favor of plaintiff setting aside the sale, directing the acceptance of the taxes tendered by plaintiff and the return of the purchase price paid by defendant, Seminole Supply Company, and from the judgment overruling motion for new trial defendant prosecutes this appeal.

This property was sold in bulk for a lump sum and the sole question before the trial court, and therefore the sole question here, is whether any part of the property sold was real estate. If any part of it was real estate, then the sale was void and the judgment of the trial court setting it aside was correct. It appears that this refinery or oil blending plant was built in 1928, and soon thereafter the owners incorporated, and transferred the plant to the corporation. They held title to the real estate upon which the plant is located, however, in their individual names until shortly after this assessment was made, then title to the real estate was transferred to the corporation. It appears from the evidence that all of the property sold was used in connection with the operation of the plant. Mr. Dar-

land, secretary-treasurer of the company, was asked the question while on the witness stand, "What buildings were on that land?" And his answer was:

"Two resident houses and a galvanized ware-house building and a galvanized boiler house, pump house and water well pump house and another structure where the blending kettle is and a big rock on which are located, I believe, five big tanks on one and another with six tanks, water well and pump house over it and a wooden tower with a water tank on it and a small house over the lighting plant."

He also testified that the boiler was "on a cement foundation and connected with steam lines under ground and above the ground and a gas line and water connections under the ground." He also testified that practically all of the machinery and equipment was attached to the real estate by cement or bolts, that part of it was buried in the ground, that the light plant sold was used in generating electric current for lighting the premises, that it had a concrete base and was in a little house by itself and connected with underground galvanized storage tanks with electric wires attached to poles, and that there was a net work of gas lines and oil lines, and that much of the machinery could not be removed without wrecking the buildings housing it.

This evidence was not disputed and was so conclusive that the trial court could not have reached any other conclusion without, in our judgment, doing violence to the law, as announced by this court in many cases.

Counsel for both sides favor us with very exhaustive and unusually well prepared briefs, discussing every phase of the law pertaining to the distinction between real estate and personal property, its use for taxing purposes, trade fixtures, etc. In fact, the briefs, in our judgment, cover a much wider range than the issues in this lawsuit justify.

In reaching our conclusion upon the issues here presented, let us ask the question, Does the evidence show that any portion of the property sold was real property within the contemplation of section 11722, O. S. 1931, defining real property as consisting of

"Land;

"That which is affixed to land;

"That which is incidental or appurtenant to land"

—and section 11724, stating that:

"A thing is deemed to be affixed to land

when it is attached by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws"

—and section 11725, which states that:

"A thing is deemed to be incidental or appurtenant to land, when it is by right used with the land for its benefit."

The answer must inevitably be affirmative. This corporation owned the land upon which the plant was built. This equipment was used in the operation of the plant and was in one way or another attached or became a part of the real estate. If the levy had been made upon the stock of oils on hand, the barrels and other equipment not actually used in operating the plant, alone, no doubt the sale of this property would have been valid, but we can reach no other conclusion than that there was an effort made to sell as personal property that which the law specifically designates as real estate. Section 12331, O. S. 1931, provides that:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining. * * *"

In Elerick et al. v. Reed, 113 Okla. 195, 240 P. 1045, this court had under consideration the question of whether a certain gasoline pump and air compressor in the manner in which they were used constituted chattels or real property, and in discussing that question we used the following language:

"It appears from the record that these articles were fastened upon cement foundations with bolts and some parts of them were placed in the ground, as will be more particularly set out hereafter. The rule in determining whether machinery is a fixture or a chattel is stated in Great Western Mfg. Co. v. Bathgate, 15 Okla. 87, 79 P. 903:

" 'First. By determining whether the machinery has beeen actually annexed to the realty, or something appurtenant to the realty. Second. Whether the machinery is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated. Third. The intention of the party making the annexation to make a permanent annexation to the freehold.' * * *

"In the case at bar the gasoline tank was shown to be three to seven feet under the ground, the pump fastened to a concrete base by bolts, and these fixtures obviously were indispensable in carrying on the specific business. No evidence nor offer of evidence contradicts this, and notwithstanding some offer of proof concerning a chattel mortgage executed by the purchaser of the fixtures, it clearly was the intent of the purchaser and holder under tax title to annex the machinery as a part of the realty, and we find no difficulty in concluding that the machinery here involved became fixtures."

The rule thus laid down has become a fixed part of the law of this state, and we see no reason in the instant case for varying or modifying it.

We appreciate the effort and industry of counsel on both sides to aid in reaching a proper conclusion by furnishing us exhaustive briefs, but in the light of the record before us we feel that an exhaustive discussion of the various authorities cited and quoted from would serve no good purpose in view of the fact that we have so often reiterated the rule that where a cause is tried to the court without the intervention of the jury, a general finding of the court is, upon appeal, to be given the same weight and effect as the verdict of a jury (Bailey v. Williamson-Halsell-Frazier Co., 44 Okla. 586, 145 P. 412) ; and the further rule that:

"In a civil action triable to the court, where the finding of the court is general, such finding is a finding of each specific thing necessary to sustain the general finding; and where such finding is not clearly against the weight of the evidence, the judgment will be affirmed." (Watashe v. Tiger, 88 Okla. 77, 211 P. 415.)

It is therefore our conclusion that the judgment of the trial court should be, and the same is hereby, affirmed.

McNEILL, C. J., and BUSBY, CORN, and GIBSON, JJ., concur.