## QUALITY MILK PRODUCTS CO. v. YOUNG.

No. 23484.    Oct. 1, 1935.

Rehearing Denied Nov. 26, 1935.

Hughes & Ellinghausen and Earl Foster, for plaintiff in error.

W. V. Pryor and C. B. Rockwood, for defendant in error.

WELCH, J. This appeal involves the ownership of certain machinery, apparatus, and appliances located in a certain brick building in Sapulpa. The parties are referred to as they appeared in the trial court, where this action was commenced in December, 1931.

The defendant, Quality Milk Products Company, occupied the premises as tenant to January 1, 1932, and claims the ownership and the right to remove the machinery, apparatus, and appliances used and operated by that company in carrying on its business of manufacturing ice cream and handling dairy products. The plaintiff, Glenn O. Young, owns the building and claims also to own the machinery, apparatus, and appliances involved.

Pertinent facts are that the brick building was originally used and occupied as a garage. In 1920, L. K. Jones and Chas. Smith purchased the building for use and occupancy in the manufacturing of ice cream and handling dairy products. They to some extent rearranged the interior of the building, and constructed partitions and installed in the building certain machinery, apparatus, and appliances of considerable value. This machinery was designed for the manufacturing of ice cream and handling dairy products, and consisted in part of heavy machinery, motors, and the like. Some of the heavy appliances were fastened to concrete pedestals for security by bolts, and there were various fastenings of wire and pipes to the walls and ceilings for security and efficiency.

L. K. Jones and Chas. Smith continued to operate their ice cream and dairy products business until about 1923, when they sold and conveyed all the machinery, apparatus, and appliances to the Southern Ice & Utilities Company, but retained title to the building. This company then leased the building and continued to occupy the same as tenant, and to there use their said machinery and equipment. In 1926, L. K. Jones and Chas. Smith sold the building and lot by general warranty deed to Glenn O. Young. Thereupon the Southern Ice &

Utilities Company entered into a contract leasing the building from Mr. Young and continued to so occupy and use the building until 1928. In that year the Southern Ice & Utilities Company sold the machinery, apparatus, and appliances to William Hawkes, who operated the ice cream business, paying the rent to Mr. Young on the building until the year 1929. In that year Mr. Hawkes sold the machinery, apparatus, and appliances to the Quality Milk Products Company, and that company operated the ice cream and dairy business, occupying the building as tenant of Mr. Young to January 1, 1932.

On December 10, 1931, prior to the expiration of its term as tenant, the Quality Milk Products Company was about to remove the machinery, apparatus, and appliances from the building, when Mr. Young, claiming to own the machinery, brought suit for injunction and obtained temporary restraining order preventing such removal. The company cross-petitioned for restraining order to prevent Young from removing or appropriating any of the machinery.

The plaintiff, Mr. Young, claims to own all of the items of property, upon the theory that they are attached to the building and became a part thereof, while the company contends to own the machinery by purchase from Hawkes and the Southern Ice & Utility Company, who purchased the same from Jones and Smith in 1923

The trial court found in favor of the defendant as to part of the property involved, and for the plaintiff as to part.

We can best consider the items of property involved in two classifications: First, the items which the trial court found belonged to the defendant, with the right to remove the same, to wit:

"Eight motors; 100 gallon pasteurizing vat; ice crusher; washing vat; steam turbine; can truck; 60 quart Cherry-Burrell freezer; 40 quart creamery package freezer; can sterilizer; 12 H. P. boiler; and any other miscellaneous machinery and equipment belonging to the said Quality Milk Products Company and located in said premises; save and except the hereinafter described machinery and property"

—and the second classification being the items described as:

"One York refrigerating machine; line shaft fastened to the ceiling; all partitions. including the walls and cork insulations in the cooling room"

—being the items which the trial court held

should be considered as a part of the building and therefore belonged to the plaintiff.

However, as to the items of property referred to in the second classification, the defendant claims to own the York refrigerating machine only, and waives any further claim to the other items in the second classification, that is, the line shaft, partitions, and cork insulations.

There is testimony that many of the items of property involved are in some manner connected together or attached to the walls, ceiling, or floor of the building. There is evidence that some of the items of property rested upon their own weight without attachment. The method of attachment differs as to the various items of machinery, as the need or necessity differed as to the various items. As to all attachments of the items of machinery, the method of attachment used was necessary for the stability, operation, and efficiency of that respective item of machinery or appliance, in the trade or business. And it is clearly shown by the weight of the evidence that all of the machinery, apparatus, and appliances now involved can be removed without damage to the building itself.

During all of the time from 1923 to the end of 1931, the Southern Ice & Utility Company and William Hawkes and Quality Milk Products Company maintained the machinery and paid taxes thereon as the owner.

It is elementary that one person may own a building while another owns machinery and appliances used therein in a trade or business. We do not understand that it is claimed otherwise. That, then, was the situation as to this building and this machinery and equipment since 1923. That is, from 1923 to 1926, Jones & Smith owned the building, while the Southern Ice & Utility Company owned machinery and equipment. From 1926 to 1928, Young owned the building, while the same company continued as owner of the machinery. From 1928 to 1929, Young owned the building, while Hawkes owned the machinery. From 1929 to the end of 1931, Young owned the building, which he continues to own, while the defendant, Quality Milk Products Company, owned the machinery, which it continues to own.

That company had done nothing to lose its title to the machinery and appliances, and the plaintiff, Young, had done nothing to acquire title thereof. The building was not constructed specially to house the machinery or this business enterprise. The original purpose of construction was not shown. It is a brick building on a business street of the city of Sapulpa. It might have had and may yet have a multitude of uses other than that of rental to the defendant for use in its business. It was occupied by a garage before put to present use. There is nothing to indicate that Young intended to purchase this business or this trade, or any of its machinery or apparatus, or that he did so, when he bought the building and lot. The contrary is well indicated. There is nothing in the attachment of any of the items of apparatus to indicate any intention to make and maintain them or any of them a permanent part of the building, and they were not so attached or installed into the building as to become a part thereof. There was in fact no attachment to the building whatever except such as was deemed desirable for efficiency in operating the appliances in the trade or business carried on by the tenant.

This was evidently the conclusion of the trial court as to the items enumerated in the first classification, supra. The plaintiff attacks that portion of the judgment, but it is clearly supported by the weight of the evidence. In fact, a contrary conclusion would be against the clear weight of the evidence. As to that portion of the property, the judgment of the trial court merits full approval and affirmance.

The trial court found a difference and a distinction as to the York refrigerating machine. We are unable to follow that conclusion, as it is against the clear weight of the evidence. There was no controlling difference in the manner of its attachment to the building. It was a part of the aggregate equipment of the trade or business, and was attached or installed and maintained with like intent as to its character, and use and ownership, as were the other items of machinery and appliances. All of the items in controversy were owned and used by the defendant as an harmonious whole.

As we construe the record, each of the owners in turn of the machinery and equipment after 1926 recognized Mr. Young as the owner of the building, and likewise during said period Mr. Young recognized each of them in turn as the owner of the machinery and equipment.

The record shows the approximate value and rental value of the building over the years mentioned, and that the value of the

machinery and equipment was double the value of the building, and that its rental value was double the rental value of the building.

After Mr. Young purchased the building he had three tenants, each in turn owning the machinery, and with it occupying the building under rental contract or lease. The circumstances may be construed as clearly implying a contract or agreement between landlord or tenant that the tenant might remove the machinery and appliances and apparatus from the rented premises. We see nothing in the method of attaching or securing the machinery, or in the actions of the parties, to indicate otherwise.

It is a well-known rule, of course, that chattels may be so attached to realty as to become a part thereof. It is also true that by agreement of the parties chattels attached to realty may retain their character as personal property, though but for that agreement they would become or remain a part of the realty. It was so held in Lawton Pressed Brick & Tile Co. v. Ross-Keller Triple Pressure Brick Mach. Co. et al., 33 Okla. 59, 124 P. 43.

As to the criterion for determining whether chattels are a part of the realty by reason of attachment thereto, see paragraph 1 of the syllabus in Seminole Supply Co. v. Seminole Refining Co., 173 Okla. 132, 45 P. (2d) 1084.

The plaintiff, Young, attacks the judgment of the trial court for permitting the defendant to enter the premises to remove the machinery after the term as tenant had expired. That term expired January 1, 1932, and the cause was not finally tried till some time later. But it must be remembered that early in December, 1931, and before the term expired, the tenant, the defendant, was about to remove his property, and would have done so in due time but for the plaintiff's suit and restraining order. The judgment of the trial court in this regard is sustained by the decision in Goodman v. Hannibal, etc., Railroad Co., 45 Mo. 33, 100 Am.-Dec. 336, wherein it was said:

"And where the landlord, before the expiration of the term, enjoins the tenant from removing the chattel or fixtures, the tenant will be allowed a reasonable time after the dissolution of the injunction within which to demand and remove the same. Bircher v. Parker, 40 Mo. 118."

We feel we must approve that rule, and its application here disposes of this contention of the plaintiff.

Upon the whole record, we must sustain the conclusion of the trial court in finding that the defendant was entitled to remove his property from the building. That court, however, should have applied the same rule and the same conclusion also to the item referred to as the York refrigerating machine. To that extent the judgment of that court must be reversed.

The cause is remanded to the trial court, with directions to reinder judgment sustaining defendant's right to remove the York refrigerating machine, as well as the other items which defendant was authorized to remove under the judgment appealed from. The trial court is directed to fix a reasonable time for defendant to so remove his property and to restrain plaintiff from interfering with defendant in such removal of its property from plaintiff's building.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.