### POTTS et al. v. BIGGS & CO.

No. 22837. Jan. 28, 1936.

Rehearing Denied February 18, 1936.

A. J. Welch, for plaintiffs in error.

Meacham, Meacham & Meacham, for defendants in error.

PER CURIAM. This was an action in the district court of Custer County for conversion brought by Biggs & Company, a Texas corporation authorized to do business in this state, against T. F. Potts, J. W. Garnett, and Security National Bank of Clinton, Okla.

The parties will be referred to as they appeared in the trial court.

On the 25th day of July, 1929, the plaintiff sold and delivered to the defendant T. F. Potts one 14-inch left-hand Lokey Burr Extractor (a mechanical device used in conjunction with cotton gins), which was installed in the gin-house of the defendant Potts at Vici, in Dewey county. Two promissory notes of even date, for $550 each, were executed as a part of the purchase price, and an instrument described by plaintiff as a chattel mortgage was likewise executed and filed for record in the office of the county clerk of Dewey county.

Plaintiff alleges in the second cause of action that a certain Stacey all steel dropper (another device connected with the ginning of cotton) was sold to the defendant Potts on August 6, 1929, under similar circumstances, delivered to him and installed in his gin at Vici, and that for this purchase price he executed his promissory note of $198.65, and executed an instrument described by plaintiff as a chattel mortgage, which was likewise recorded in the office of the county clerk of Dewey county.

Subsequent to the default by defendant Potts in the payment of these notes, and before any action was taken to foreclose under the recorded lien, it was alleged that the defendant Potts sold his gin, and delivered along with it this property to defendant J. W. Garnett, acting through the defendant Security National Bank of Clinton, for the consideration of $13,000, which sum was deposited in the defendant bank and retained by it to the exclusion of the plaintiff, and that this action constituted a conversion for which plaintiff seeks recovery herein.

As a matter of defense, joint answer was filed by J. W. Garnett and the Security National Bank, in which the jurisdiction of the court was first attacked on the theory that, that property being real, the venue should have been in Dewey county rather than in Custer county, the residence of the several defendants.

The defendants' principal defense is based upon their claim that when this particular property was sold it was attached to the gin building and to the machinery therein, and hence became a part of the real estate belonging to the defendant Potts, and afterwards contracted and sold as such to the defendant Garnett. It was also defendants' contention that even if the machinery was personal property, no demand had ever been made by the plaintiff as a prerequisite to an action for conversion. The defendant bank's position is that it acted as the go-between to effect the sale between Potts and Garnett and protect itself in the collection of a note secured by real estate mortgage on the said property of defendant Potts in the sum of $9,031.73. Defendant bank alleges that after receiving the purchase price of $13,000, the sum due it was deducted and the sum of $3,-368.33 due the Chickasha Cotton Oil Company secured by a note and mortgage on the gin property of the defendant Potts was paid; that the defendant bank paid $6.05 for recordation of papers, and delivered to defendant Potts the balance of $593.89.

Defendant Potts did not plead, but we find him present and represented by counsel at the time of the trial, hence we shall treat all the defendants as being properly in court and subject to the determination of all issues herein involved.

This case was presented to a jury. At the conclusion of all of the evidence both sides filed their demurrers and moved for a directed verdict. This was taken by the court as a justification to withdraw the case from the jury. The court after discharging the jury took the matter under advisement, heard arguments, considered authorities, and rendered a judgment for the value of the property converted, in the sum of $1,635.02, bearing interest at the rate of 6 per cent. per annum from April 13, 1931, together with costs. From this judgment the defendants have appealed to this court, basing their appeal on the following five propositions of law set out in their own language as follows:

"1. The court erred in overruling the demurrer to the petition, the objection to plaintiff's evidence, the demurrer to plaintiff's evidence, the motion of defendants for a directed verdict, the motion for a new trial, and in rendering judgment for the plaintiff, for the reason that the machinery alleged to have been converted was real estate as defined in sections 8395-8397 and 8555, C. O. S. 1921, and was not subject to conversion; and plaintiff's recorded

chattel mortgage created no lien on the same as against bona fide real estate mortgagees and purchasers.

"2. Under plaintiff's petition and evidence there could be no conversion without previous demand, even had the machinery been personal property, and there was no attempt to plead or prove a demand before suit, but, on the other hand, plaintiff's evidence affirmatively shows that no demand was made.

"3. There was no controverted fact upon which the court could exercise its discretion and judgment in rendering judgment for plaintiff, and its judgment was in direct conflict with the undisputed evidence and the law.

"4. It was error for the court, at the close of the case when both parties moved for a directed verdict, to assume that each party waived a jury by moving for a directed verdict, and in discharging the jury and thereafter making findings of fact and rendering judgment for plaintiff without passing upon said motions. Such action had the effect of depriving the defendants of their right to a jury trial; and, under the facts of this case as shown by the record, deprived the defendants of the benefit of findings of fact by the court.

"5. If this court finds there were issues of fact presented (the trial court says there were none, R. 182-183), and that a jury trial was waived, then we insist that the trial court's judgment is wholly unsupported by the evidence, and is in direct conflict with the plain and undisputed evidence and the law."

It is our view that the very axis upon which this whole case turns is whether the property in question is to be treated as personal or real. The several other questions are trivial in comparison to this perplexing problem challenging our immediate analysis.

In Seminole Supply Co. et al. v. Seminole Refining Co., 173 Okla. 32, 45 P. (2d) 1084, recently decided, this court said:

"The rule in determining whether machinery is a fixture or a chattel, remains chattels or becomes fixtures, is applied as follows: First, by determining whether the machinery has been actually annexed to the realty or something appurtenant to the realty; second, whether the machinery is applicable to the use or purpose to which that part of the realty with which it is connected is appropriated; third, the intention of the party making the annexation to make a permanent annexation to the freehold."

See, also, the recent cases of Quality Milk Products Co. v. Young, 175 Okla. 98, 51 P. (2d) 547, and Quality Milk Products Co. v. Endowment Loan & Mortgage Co., 175 Okla. 94, 51 P. (2d) 550.

We find from this record conflict of testimony, plaintiff being reasonably well fortified in its position that the machinery sold and installed in this gin was not annexed to the freehold, but rested therein very much by its own weight, with an admitted bit of testimony that perhaps it might have been "toe-nailed" or supported by sufficient materials to prevent vibration, while the defendants present certain testimony in support of their theory to the effect that it was necessary to take out one side of the gin to install this machinery, and that a platform was then built on which it rested, and that a prop or studding connected it with the rafters, and that the machine was nailed down to the platform upon which it rested.

Early cases were disposed to treat this as a mixed question of law and fact, but the tendency of more recent cases is to treat this as a question of fact. Perhaps if the jury in this particular case had not been discharged following the action of attorneys for all parties in demurring and moving for a directed verdict, this question would have been determined by the jury, but since the jury was discharged, then it became the function of the court to pass upon this question. While we recognize that there are numerous cases previously decided holding both ways, in accordance with the particular facts in each individual case, yet the general rule has always been applied that the finding of the trial court on such question of fact will not be disturbed by this court. As a matter of fact, the very early case of the Great Western Manufacturing Co. v. Bathgate et al., 15 Okla. 87, 79 P. 903, and which has been stressed in the brief of the defendants herein, held:

"* * * We think from an examination of the entire record, and all of the evidence contained therein, that there is evidence which clearly tends to support the finding of the trial court. * * * And this being true, under the oft-repeated, well-understood, and universally followed rule of this court, the finding of the trial court on this question of fact will not be disturbed."

We are unwilling, however, to rest our decision on this point without looking further to the intention of all the parties, since we think that due consideration demands a determination of what was the intention of the parties with reference to this question before us. We find from the record that when the property was sold by the

plaintiff to the defendant Potts, notes were taken for the purchase price, and evidently it was the intention of all parties to retain a lien of some form upon the property until the purchase price was paid. True enough, it is difficult to define just what name should properly be given the two liens taken in this case. The first one has no title, and the second one is styled a "chattel mortgage," but a rose by any name possesses the same odor, and in this case we are convinced that the intention of both plaintiff and defendant Potts was that a lien should follow the sale of this property, protecting the plaintiff until the purchase price was met. These two liens were put upon record in the county where the property was delivered and installed, in defendant Potts' gin at Vici. Certainly then, this constituted some form of constructive notice, and while we should not be disposed to settle this question upon this single phase of constructive notice, yet it appears in the record that all of the parties sooner or later, and before the consummation of the sale of defendant's entire gin to defendant Garnett, did have actual notice that the plaintiff claimed an interest in and a lien upon this particular part of the property in defendant Potts' gin at Vici. Potts was bound to have had actual notice because he signed both liens. The defendant bank had notice because its officer communicated with the plaintiff concerning the indebtedness of Potts and was advised of its claim, which is part of the record, and he in turn revealed this information to the defendant Garnett, who admits in his testimony that it came to his knowledge before a final consummation of the deal and before the last of the purchase price of Potts' gin was paid by him to the defendant bank. We, therefore, are persuaded to believe that all of the defendants not only had constructive notice, but each of them had actual notice of the plaintiff's claim of interest in this specific property. Influenced as we are, therefore, by the weight that should be given to the knowledge and intention of the parties, and convinced that the chattels in this instance were capable of being removed without damage to the freehold, we cannot avoid the final conclusion that for all intents and purposes this property should be treated as chattels rather than real estate.

The defendants further plead that even if the machinery should be construed as personal property, yet no demand had ever been made by the plaintiff as a prerequisite to an action for conversion. Under circumstances as revealed in the record, no demand is necessary. This court has heretofore said in the case of Danciger v. Isaacs, 82 Okla. 263, 200 P. 164:

"Demand is not a necessary prerequisite to the commencement of an action for wrongful conversion where the act of conversion has been consummated and demand would be useless."

Defendants' contention that there was no controverted fact upon which the court could exercise its discretion and judgment in rendering judgment for plaintiff, is not well taken. There was conflict of testimony as to the nature of the manner in which the machinery was attached, and the trial court had a right to rely on the testimony of the plaintiff that the machinery never became a part of the freehold.

Defendant further claims that there was error when the trial court took the case from the jury at the close of the evidence. We believe it unnecessary to discuss whether the court erred in taking the case from the jury, as the journal entry signed by the court as contained in the record shows that both parties consented that the jury should be discharged and that judgment should be rendered by the court. The record does not show that defendant excepted to the order of the court dismissing the jury, and we believe therefore that defendants cannot raise the question of error in this court. This court has held in numerous decisions that rulings of the trial court to which no exceptions are saved will not be reviewed. Saxon v. White, 21 Okla. 194, 95 P. 783; Baird v. Conover, 66 Okla. 288, 168 P. 997; City of Healdton v. Blackburn, 169 Okla. 357, 37 P. (2d) 311.

We believe the trial court's judgment was supported by the law and evidence, and therefore affirm the judgment of the trial court.

The plaintiff having requested in its brief that judgment be rendered against the sureties upon the supersedeas bond filed herein by the defendants, judgment is hereby rendered as against said sureties, C. G. Welch and L. E. Coleman, for the amount of $1,635.02, with interest thereon at the rate of 6 per cent. from and after April 13, 1931, and costs of this action, all as allowed by the trial court.

The Supreme Court acknowledges the aid of Attorneys J. Berry King, Robert D. Crowe, and Edward Hirsh in the preparation of this opinion. These attorneys constituted an advisory committee selected by

the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. King, and approved by Mr. Crowe and Mr. Hirsh, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.