## INCORPORATED TOWN OF PITTSBURG v. COCHRANE et al.

No. 31467. March 13, 1945.

Rehearing Denied June 19, 1945.

*159 P. 2d 534.*

Guy L. Andrews, of McAlester, for plaintiff in error.

Fred E. Suits, of Oklahoma City, and John L. Fuller, of McAlester, for defendant in error E. J. Cochrane.

ARNOLD, J. On January 16, 1942, H. A. Ellis, individually and in behalf of all others similarly situated, commenced this action in Pittsburg county against E. J. Cochrane to enjoin him from interfering with the water system and service of the town of Pittsburg.

The town of Pittsburg was granted leave to intervene and the sheriff and treasurer of Pittsburg county were made additional parties defendant.

In its amended intervening petition the town of Pittsburg alleged it was a municipal corporation existing under the laws of the State of Oklahoma; that as such it had an interest in the subject of the action adverse to the defendant, Cochrane; that in 1910 the Pittsburg Water & Light Company, a domestic corporation, was granted a franchise to furnish water and lights to the inhabitants of said town; that said corporation was organized for a term of 20 years, which term had expired, and that no extension or renewal had been obtained; that the franchise was for a period of 25 years; that it had the duty to protect the streets and alleys of the town and the property of the citizens from damage by reason of faulty construction or lack of repair and to furnish adequate service; that after the expiration of the term for which its charter was granted it was the duty of the directors of the former corporation to wind up its corporate affairs and that on and after March 7, 1930, the expiration date of its charter, all the prop-

erty and rights formerly belonging to said corporation became vested in the stockholders; that since its dissolution in 1930 the directors, as trustees of the corporate property, and the stockholders have failed and refused to take over the property and have abandoned same and that by reason of laches said property rights have been lost and no person, firm, or corporation now have any rights therein superior to the rights of said town; that after the franchise was abandoned the water system was extended and repaired by the town; that the water supply is situated upon a described tract of land out from the town and is a part of the water system; that all the property is now and has been since 1910 devoted to public use and is subject to the laws of the State of Oklahoma relating to property so dedicated; that upon the expiration of the franchise the successor to said corporation had the duty to determine within a reasonable time what disposition would be made of the property subject to the franchise obligations; that no steps have been taken toward the accomplishment of that purpose; that they have neither elected to remove the property within a reasonable time nor dispose of it in any other manner nor required the town to appraise said property and obtain same either by purchase or condemnation; that the trustees and stockholders of the corporation have abandoned their rights therein and same have reverted to the intervener and is held by it subject to be used in serving the public; that the defendant, Cochrane, is attempting to interfere with such property, claiming to have purchased same under tax warrants issued by the county treasurer of Pittsburg county, each of which were issued against the corporation commanding the sheriff to sell its property; that such warrants were null and void and the action of the sheriff illegal because the corporation owned no property in Pittsburg county; that levy was made on the property belonging either to the intervener or the individuals who were the former stockholders; that the sheriff executed deed purporting to convey both real and personal property of the town or unknown individuals; that the defendant, Cochrane, is threatening to destroy the entire water system; that he is about to go upon the streets and alleys and cause excavations to be made to remove the mains and laterals, a component part of such water system; that he claims to have obtained title from Roy Wheeler by quitclaim deed and bill of sale which are void because based upon a void tax deed; that the town is wholly dependent upon said water system, and if lost, the schools will have to be closed. The prayer was for a permanent injunction against Cochrane, his agents and employees.

For second cause of action it alleged that by reason of public need it had taken possession of the entire water system; that the system is badly in need of repair; that there are leaks in the mains and laterals allowing pools of water to stand in the streets and alleys; that this condition will continue unless steps are taken to repair the system; that the defendant, Cochrane, has refused to continue to operate the system. It alternatively prayed that in event it failed on the first cause of action a receiver be appointed to take charge of the system and that he be ordered to operate and preserve it during the litigation.

As a third cause of action all previous allegations were adopted and in addition it was alleged that in the event it was determined that the town was not the owner and entitled to possession of the property comprising the water system, that the town desires and purposes to acquire such property by condemnation or purchase; that such property should be charged with the reasonable rental value of the streets and alleys during the period of time elapsing from the termination of the franchise and the acquisition of the system by the town and damages for failure to maintain the system should be credited against the value of the property.

Intervener also prayed that the tax

assessments assessed against the property since the stockholders abandoned same be declared void; that the tax warrants be canceled and all grants through or under the sheriff's deed also be canceled; that the assessment of the property as the property of the corporation be declared to have been unauthorized and illegal, and that it have such other relief as in the premises, either in law or equity, it might be entitled to.

The demurrer of the defendant, Cochrane, to the petition of the intervener on the ground that it did not state facts sufficient to constitute a cause of action was overruled and exception saved.

The county treasurer and sheriff filed a joint answer in which they denied that they entered into a conspiracy with the officials of the corporation or any other person to deprive the citizens of Pittsburg of the water system. It was admitted therein that the treasurer issued alias personal delinquent tax warrants and that same were delivered to the sheriff as required by law and that the sheriff executed same by levying upon the real and personal property belonging to the Pittsburg Water & Light Company, caused notice that same would be sold as personal property upon execution to be posted and published as required by law; that the property was sold and the proper return made to the treasurer.

In his answer to the petition of the plaintiff and of the intervener, the defendant, Cochrane, admitted the incorporation of the Pittsburg Water & Light Company and the issuance of the franchise. He alleged that by virtue of certain tax warrants issued by the county treasurer the sheriff levied upon the property of the corporation and sold all the property at public auction, as required by law, to satisfy legally assessed delinquent taxes; that he is now the owner and in possession of the property; that although the charter of said corporation had expired in 1930 the trustees had continued to pay

its annual corporation license tax; that it was permitted to and did furnish water to the town up to the time of the sheriff's sale and that subsequent thereto the purchaser and thereafter he as successor in title continued to furnish water down to August 9, 1942; that under section 8 of the franchise, notice was served upon the executive officer of the town that water service would be discontinued; that the franchise covered only the distribution system within the corporate limits of the town; that by reason of economic conditions the town had dwindled in size; that the water system was in bad state of repair; that there was not a sufficient number of users to justify the repair of the system and further operation of the water system was impractical and financially impossible; that the title to all of the properties had been quieted in him by action in the district court; that there had been no abandonment of the system in that said town had, during all of the time covered, accepted the service. He prayed that the properties be restored to him and that he be permitted to remove same within a reasonable time.

The intervener by reply denied generally all allegations made by Cochrane.

The intervener's testimony was to the effect that it had taken over the water system, including the lake and the land on which it was located; that the water flowed by gravity through a pipeline to the town; that the pipe line, the mains and laterals were buried from three to nine feet under the ground; that the mains were buried in the middle of the streets of the town; that it was connected to the sewer system; that the schools depended upon the system for water; that there were about 400 pupils attending the schools; that there were about 100 houses connected to the system; that some of the leaks in the system had been repaired at the expense of the town; that there had been no town election since 1931 because of the lack of funds; that the population of the town had gone down in

the past few years but recently a few houses had been moved into the town; that there had always been a town board, which met every two weeks; that for the past ten years there had been no maintenance of the water system by the corporation; that the town received $600 per year from the county treasurer; that since the town had taken over the water system it had been collecting $1 per month from each water user; that the last election of trustees was in 1931 and since that time new members had been appointed by the other board members; that defendant's notice that the water system would be removed was served on the town officials as alleged by Cochrane.

A part of the sales proceedings under the tax warrants, and testimony as to the sale thereof, were introduced. The sale was held on the bank of the lake and Roy Wheeler was the only bidder. He bid $1,710. After payment of all delinquent taxes the balance of $1,005.31 was turned over to the manager of the water company, Mr. Drew.

The testimony on behalf of the defendant was to the effect that the revenue from the water system had gone down to the extent that it was impractical to operate it; that the attorney for the water company helped prepare the notice and handle the sale under the tax warrant and Roy Wheeler was the highest bidder; that later he sold and obtained a judgment quieting title to the properties in him and against the stockholders.

The trial court found that the water franchise expired in 1938; that since that time the town of Pittsburg had continued to get water from the system; that by reason of the failure of the water company to pay taxes assessed against its properties tax warrants were issued by the county treasurer; that the properties were sold thereunder and Cochrane now has title thereto; that the town went down by reason of the closing of the mines; however, its population and number of houses had increased some since the bomber plant was built; that the schools depended upon the system for water. It concluded as a matter of law that the water system did not revert to the town when the franchise expired; that the properties were properly sold under the tax warrants; that after expiration of the franchise the water system could not be removed and the water cut off until after the town had been given a reasonable time in which to obtain a new water system, which under the present war situation was two years.

Judgment was rendered in conformity with the findings of fact and conclusion of law.

Motions for new trial were filed by both intervener and the defendant, Cochrane. Both motions were overruled and said parties appealed.

The first question for determination is whether upon the expiration of the franchise the town of Pittsburg became the owner of the properties, both real and personal, making up the water system. The general rule is that by the mere grant of a franchise to a public service company the town does not become the owner of the tangible property used in operating the service, nor, unless expressly provided by the franchise, does it become the owner thereof by the termination of the service by limitation of the franchise or the expiration of its charter.

On expiration of the franchise the company might have been compelled to remove the property used from the streets and alleys. Ordinarily, under such circumstances it would have had the right to remove same after reasonable notice. In the case of Oklahoma Railway Co. v. City of Guthrie, 175 Okla. 40, 52 P. 2d 18, we quoted with approval section 436, vol. 19, R.C.L., at page 1161, wherein the above rule is expressed. We recognized the same rule in City of Vinita v. Vinita Fuel Company, 11 P.U.R. (N.S.) 100. See, also, Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N.W. 1081; Ann. 112 A.L.R. 625; 38 Am. Jur. sec. 552, pages 239-40. If after termination of the franchise the company contin-

ues to furnish and the town accepts the service, an implied contract of indefinite duration arises and the company functions as a quasi-public utility subject to the terms of the former franchise and the rules and regulations of the Corporation Commission. Such arrangement may be terminated by either party by the giving of such a reasonable notice as would be consistent with the duty owed by both to the inhabitants of the town. See Ann. 112 A.L.R. 635, 43 Am. Jur. sec. 79, page 622. Authorization by the Corporation Commission for the discontinuance of the service and for the removal of the property from the streets and alleys is not required by law. Article 9, sec. 18, of the Constitution; 17 O.S. 1941 § 152; City of ·Vinita v. Vinita Fuel Co., supra; City of Wilson v. Weber, 101 Kan. 425, 166 P. 512.

The judgment of the trial court is consistent with the above stated rule in concluding that the town did not have title to the water system. We cannot agree with the position taken by the intervener that it became the owner of the water system upon the expiration of the franchise. In view of our holding in the case of Oklahoma Railway Co. v. City of Guthrie, supra, the cases from other jursdictions cited and relied upon are not controlling on this phase of the case.

The conduit from the lake to the town and the mains and laterals in the town were affixed and appurtenant to the land on which the reservoir was situated; they were an integral part of and incidental to the operation of the water system and constituted realty under all the facts and circumstances of this case. See Seminole Supply Co. et al. v. Seminole Refining Co. et al., 173 Okla. 32, 45 P. 2d 1084; Elerick et al. v. Reed, 113 Okla. 195, 240 P. 1045; Davis v. Spurrier Lumber Co., 159 Okla. 261, 15 P. 2d 131; Scrivner v. Pope, 143 Okla. 246, 289 P. 311; Kilgore v. Lyle, 30 Okla. 596, 120 P. 626; Hinkle v. Bass Furniture Co., 117 Okla. 207, 246 P. 228; Quality Milk Products Co. v. Endowment Loan & Mortgage Co., 175 Okla. 94, 51 P. 2d 550; Quality Milk Products Co. v. Younge, 175 Okla. 98, 51 P. 2d 547; Potts et al. v. Biggs & Co., 176 Okla. 96, 54 P. 2d 341, and the statutes therein cited.

The only relief sought by either appellant was injunction against the other. The town is in possession of the water system claiming title by reversion, which question we have disposed of, and by right of eminent domain. It has the right of eminent domain (11 O.S. 1941 § 291) and may continue its possession and operation of the water system as against all private rights, but is subject, however, to the payment to the rightful owner of the value thereof at the time of taking. Oklahoma City v. Local Federal Savings & Loan Ass'n of Oklahoma City et al., 192 Okla. 188, 134 P. 2d 565; Oklahoma City v. Wells, 185 Okla. 369, 91 P. 2d 1077, 123 A.L.R. 662.

It follows that Cochrane should have been perpetually enjoined from interfering with the city's possession and operation of the water system. In view of this determination it is not necessary to pass upon the other questions raised. The judgment of the trial court must be, and is, reversed.

OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.