CITY OF EUFAULA, OKL. v. MEYER.

No. 3594.

Circuit Court of Appeals
Tenth Circuit.

Aug. 6, 1948.

HUXMAN, Circuit Judge, dissenting.

E. C. Hopper, of Eufaula, Okl., for appellant.

W. R. Banker and A. Camp Bonds, both of Muskogee, Okl., for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

In 1921, the City of Eufaula, pursuant to the provisions of Art. 12, Ch. 10, Revised Laws of Oklahoma 1910, C.O.S.1921, §§ 4583 to 4619, inclusive, created Street Improvement District No. 2. To finance the improvements in such district, the city, on July 15, 1921, issued its street improvement bonds in the aggregate sum of $44,478.95, due on or before September 1, 1931, with interest at 6 per cent per annum. To pay the principal and interest on the bonds, assessments payable in ten annual installments, beginning September 1, 1921, where duly levied against all the lots and tracts of land within the district. The installments bore interest at the rate of 7 per cent per annum before maturity and a penalty of 18 per cent per annum thereafter. On May 12, 1936, Meyer, as a holder of 19 of such bonds, brought this action against the city for a money judgment for the amount of unpaid installments of assessments levied against property owned by the city within the improvement district hereinafter referred to, plus interest and penalties. On July 25, 1935, Lots 5 and 6, Block 81, located within the paving district, were conveyed to the city and, on August 31, 1935, were conveyed by it to the State of Oklahoma, as trustee for the Oklahoma National Guard, to be used as a site for an armory. Thereafter, an armory was constructed on such lots as a Works Progress Administration project. At the time of the conveyance of such lots to the city, the assessment installments against lot 5, maturing in 1921, 1922, 1924, 1925, and 1926, and the assessment installments against lot 6, maturing in 1921, 1925, and 1926, had been paid. The remainder of the ten annual installments of assessments levied against such lots, with matured interest and penalties, remain unpaid.

On a former appeal, Meyer v. City of Eufaula, 10 Cir., 154 F.2d 943, we remanded the case with instructions to enter a money judgment against the city for the unpaid installments levied against such lots in accordance with the principles announced in Wilson v. City of Hollis, 193 Okl. 241, 142 P.2d 633, 150 A.L.R. 1385. On remand, the trial court concluded that Meyer was entitled to judgment against the city for the amount of the unpaid installments assessed against such lots, with statutory interest and penalties thereon to July 25, 1935, aggregating $2,684.40, and for interest on the latter amount at the rate of 6 per cent per annum from July 25, 1935, to the date of the judgment, and awarded judgment for $4,617.17. The city has again appealed.

Two questions are presented. The first is whether the court should have awarded interest and penalties after the date the city acquired such lots.

In Wilson v. City of Hollis, supra, the court held that public policy prevented the forced sale of publicly-owned property to pay improvement district assessments and that, while the statute under which the improvement district was created and the bonds issued undertook to make the amount due on the bonds a lien against all of the property in the improvement district, it was not a true lien against public property because of the lack of a method of enforcement. It further held that mandamus would not lie to compel a municipality, owning property within an improvement district, to levy taxes to pay the matured and unpaid assessments against such property, and accrued interest.

It further held that the bondholder was entitled to recover a money judgment against the municipality for the amount of the unpaid installments of assessments levied against the property of the municipality within the improvement district, with interest at the rate of 7 per cent per annum to the date of maturity of each of such installments, and that such judgment should be paid, as are other judgments, under § 28, Art. 10, Const. of Okl., and 62 O.S.1941, § 431 et seq. It further held that no delinquency that would carry with it additional interest or penalty could accrue against public property, since the provisions relating to delinquency and penalty were not intended to apply to municipalities.

It seems clear to us that under the principles laid down in Wilson v. City of Hollis, the judgment should have been limited to accrued interest and penalties to July 25, 1935, when the city acquired the property.

The second question is whether the amount of the recovery should be further limited to the value of such lots 5 and 6 on July 25, 1935, exclusive of the value of the improvements thereafter placed thereon, under the doctrine of Dickinson v. Brown-Crummer Inv. Co., 10 Cir., 137 F. 2d 615, and on the theory that the acquisition of the lots by the city was an equivalent of a condemnation thereof.

The second question was raised by this court on its own motion. Additional briefs and oral arguments were requested.

Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides, "In pleading to a preceding pleading, a party shall set forth affirmatively * * * estoppel." There was neither pleading nor proof of facts by the city which would constitute a basis for a holding that Meyer was estopped to deny that the city acquired the lots by condemnation.

The doctrine that a taking by a municipality or a public service corporation, vested with the power of eminent domain, of land necessary for its corporate purpose, with or without the consent of the owner, may, where elements of estoppel are present, be equivalent to title by condemnation was first announced by the Supreme Court of Oklahoma in St. Louis & S. F. R. Co. v. Mann, 79 Okl. 160, 192 P. 231, 232. The court there said:

"Where a public service corporation (prior to statehood), vested with the power of eminent domain, enters into actual possession of land necessary for its corporate purposes, with or without the consent of the owner, and the owner remains inactive, stands by, and permits a railroad or public service corporation to go on and spend large sums of money in constructing its roads, telegraph or telephone lines, pipe lines, plants, or other necessary fixtures, the owner is estopped from maintaining either trespass or ejectment, and will be regarded as having acquiesced therein, and is restricted to a suit for damages for the value of the land, on the theory that the appropriation by the public service corporation under such circumstances is equivalent to title by condemnation."

The court referred to the rule as "the doctrine of estoppel based on self-appropriation" and refused to apply it in that case because the elements of estoppel were not present. The court said: "It would be necessary to show that the plaintiff had knowledge of the appropriation and with full knowledge acquiesced in the expenditure of money in making the improvements thereon."

The general rule as laid down in St. Louis & S. F. R. Co. v. Mann, supra, was followed in Peckham v. Atchison, T. & S. F. Ry. Co., 88 Okl. 174, 212 P. 427, 428, and in City of Seminole v. Fields, 172 Okl. 167, 43 P.2d 64, 66.

It is true, the Supreme Court of Oklahoma has held that under 66 O.S.1941 § 57, where a corporation or municipality authorized to exercise the right of eminent domain takes and occupies land for purposes for which it might have resorted to condemnation proceedings, "without having purchased or condemned the same," the remedy of the owner is damages assessed in the manner provided for in condemnation proceedings. See Oklahoma

City v. Wells, 185 Okl. 369, 91 P.2d 1077; Incorporated Town of Pittsburg v. Cochrane, 195 Okl. 593, 159 P.2d 534; and Oklahoma City v. Local Federal Savings & Loan Ass'n, 192 Okl. 188, 134 P.2d 565. But here such lots were not taken and occupied by the city without it having "purchased or condemned the same." They were conveyed by the owner to the city and the city took them subject to the delinquent assessments and the statutory lien for the same. Allen v. Henshaw, 197 Okl. 123, 168 P.2d 625, 629; United States v. State of Alabama, 313 U.S. 274, 281, 61 S.Ct. 1011, 85 L.Ed. 1327; and Meyer v. City of Eufaula, Okl., 10 Cir., 154 F.2d 943, 946.

As between the owner and the city, the latter took by purchase, and, in no sense, by appropriation. There was neither pleading nor proof that Meyer had actual knowledge of the conveyance by the owner to the city, or the erection of the armory, until after both events had transpired. The city acquired the property from the owner without making any provision for the application of the purchase price on the unpaid assessments made against the property.

We are constrained to conclude that, absent elements of estoppel, the taking by the city as between it and Meyer cannot be treated as the equivalent to title by condemnation.

Dickinson v. Brown-Crummer Inv. Co., supra [137 F.2d 618], is not to the contrary. In that case there was no conveyance by the owner to the county; appropriation and estoppel were affirmatively pleaded and urged below, as the equivalent of condemnation, and in the opinion we said:

"Where one vested with the power of eminent domain enters into possession of property and makes lasting and valuable improvements thereon and those who have an interest in the property remain inactive and make no objection, the appropriation will be treated as the equivalent of a condemnation. * * *

"Here the bondholders sat by and permitted the expenditure of approximately $13,000 of public funds for improvement of the tract on which they had a lien."

Thus, it will be seen that our decision in that case was based on an appropriation and estoppel affirmatively raised.

The judgment will be modified by reducing the amount of recovery to $2,684.40, and as so modified, it is affirmed.

HUXMAN, Circuit Judge (dissenting).

It seems clear to me that the law of Oklahoma is that the rights of a claimant to an interest in property appropriated by a municipality having the power of eminent domain are determined by the principles applicable to condemnation proceedings no matter how the property is acquired. In other words, whether the municipality acquires such property for public purposes by deed, gift, condemnation, or merely takes possession thereof, does not vary or alter the rights of a claimant of an interest therein against the municipality taking the same. Section 57, Title 66, Oklahoma Statutes 1941, in part provides:

" * * * that in case any corporation or municipality authorized to exercise the right of eminent domain shall have taken and occupied, for purposes for which it might have resorted to condemnation proceedings, as provided in this article, any land, without having purchased or condemned the same, the damage thereby inflicted upon the owner of such land shall be determined in the manner provided in this article for condemnation proceedings."

And why should this not be the law? A municipality appropriating property for public purposes becomes liable to those having an interest therein for the full value thereof and that should be so no matter how it is acquired. As long as the owners receive the full value of the property, they have no cause of complaint. They may not dictate to the municipality how it shall go about acquiring the property which it has power to condemn. They may not put the municipality to the needless expense and delay of a formal condemnation for the sole reason of preventing the attachment of a greater liability than would accrue in a regular condemnation proceeding. They may demand only the full value of the property at the time of the taking

and these demands may not be increased or decreased because the city was not compelled to go through a formal condemnation proceeding.

An analysis of the Oklahoma decisions, as well as of the Statute quoted above, leads me to conclude that this is the rule of law which Oklahoma follows. These decisions lead me to conclude that the law of Oklahoma is that the taking in any manner of public property for public purposes by a municipality vested with the power of eminent domain will be treated as the equivalent of condemnation for the purpose of measuring the monetary rights of claimants to the property.[1]

The majority has reached the conclusion that an irregular taking or a taking by a proceeding otherwise than by strict condemnation can be treated as an equivalent of a taking by condemnation only when the element of estoppel is present. With this I cannot agree nor can I read the Oklahoma decisions to this effect. True, estoppel is stressed in a number of the decisions upon which the majority rely but the element of estoppel was considered by the Supreme Court as a determinating factor only in those cases in which the one entitled to the possession of the property sought to recover his property which had been taken in an irregular manner. It is, of course, elementary that a municipality having the power of eminent domain may not by virtue thereof take possession of property over the objection of one entitled to its possession without going through a condemnation proceeding, and if it does, such a one may recover his property unless by his conduct he has estopped himself from maintaining such an action. It does not follow, however, that his rights or the rights of one other than the owner claiming an interest therein to a money judgment against the municipality for taking his property by negotiated sale or deed of gift are different in those cases in which he institutes his action immediately than they are in those cases in which he delays

until the property has been fully appropriated to public use. These conclusions are supported by the decision in Incorporated Town of Pittsburg v. Cochrane, 195 Okl. 593, 159 P.2d 534. In that case the franchise of a public service corporation furnishing water to the city expired. The city then took over the water system and continued to operate it, claiming that it became the owner thereof upon the expiration of the franchise. In an injunction action, the trial court held that the property did not revert to the city but that the owner could not interfere with the use thereof by the city until the city had an opportunity to obtain a new water supply, and entered an injunction against the person it found to be the owner until the city had an opportunity to acquire another water supply. On appeal, the Supreme Court held that a permanent injunction in favor of the city should have been entered. The Supreme Court treated the proceeding by which the city took possession of the property as an acquisition under the power of eminent domain and held that the owners thereof were limited in their rights against the city to the value of the property at the time the city took it over. In reaching the conclusion that the proceeding was under the power of eminent domain and thus the equivalent of a condemnation proceeding, the Supreme Court did not refer to the element of estoppel or stress it as an essential of a proceeding in the nature of a condemnation proceeding.

The majority concludes that the proceeding cannot, in the absence of estoppel, be treated as in the nature of a condemnation proceeding because the property was acquired by deed. I have already tried to point out that in my opinion estoppel is not an element to be considered in determining the rights of an owner who seeks a money judgment against a municipality having the power of eminent domain which has taken possession of property for a public purpose in a manner other than by condemnation. This is so whether the proper-

---

[1] See St. Louis & S. F. R. Co. v. Mann, 79 Okl. 160, 192 P. 231; Peckham v. AT&SF Ry. Co., 88 Okl. 174, 212 P. 427; Oklahoma City v. Local Federal Savings and Loan Association, 192 Okl. 188, 134 P.2d 565, 566; Incorporated Town of Pittsburg v. Cochrane, 195 Okl. 593, 159 P.2d 534.

ty is acquired by gift, deed of purchase, or is appropriated without any formal proceedings.

This conclusion finds support in the case of Oklahoma City v. Local Federal Savings and Loan Association, 192 Okl. 188, 134 P.2d 565, 566, 574. In that case the City of Oklahoma acquired property by a deed, as in this case, from the railroad company to railroad right-of-way property for park purposes. The reversionary owners instituted an action against the city for recovery of the property on the ground that when the railroad abandoned the property for railroad purposes the property reverted to them. They were successful in the Supreme Court. The court held that the city had no power to condemn the land in question for park purposes and therefore could not acquire it by deed. The opinion of the court, however, quite clearly indicates that had the city possessed power to acquire the property by eminent domain, its acquisition by deed of purchase would have been treated as the equivalent of a condemnation proceeding and the reversionary owners would have been limited in their rights against the city to the value of the property at the time it was acquired. Thus the court said:

"The city asserts that it acquired the property for park purposes and now holds the same pursuant to its power of eminent domain. *In such case, regardless of the manner in which it obtained its possession, an attempt at re-entry by the intervener would have been vain, for, where a municipality has taken possession of real property for any purpose in which it may exercise its power of eminent domain, condemnation proceedings to assess damages is the remedy of the land owner.*" [2]

A casual reading of the Brown-Crummer case cited in the majority opinion might indicate that estoppel was an essential element to bar one from claiming more from a municipality under a taking such as this than the value of the property at the time it was taken over. However, a careful reading of the opinion and the cases upon which the decision is based does not support such a conclusion. Whether the bondholders sit by or act promptly they may not seek to obtain "not the full value of their security, but rather the greatly enhanced value resulting from the expenditure of public funds after the property had been appropriated to public use * * *." That is so whether such a situation arises in a court of equity or in a court of law. It can be said with equal emphasis here as it was said in the Brown-Crummer case that it would be inequitable or unjust if that term is preferred, this being a law case, to permit these bondholders to recover from the city the greatly increased value of their property resulting from the expenditure of public funds during a National Emergency rather than the full value of the property at the time it was taken over by the city merely because the city did not go through the formality and delay of a regular condemnation proceeding when there was no need therefor. That is especially so here where the city was no more than the nominal owner of this property and was in fact only the conduit through which the title passed to the state in order to enable the government to expend public funds for the relief of distressed persons.

It is for these reasons, no doubt, that Oklahoma has said by law as well as by judicial decree that the right to a money judgment against a municipality of one claiming an interest in property appropriated to public use is limited to the full value of the property at the time of the taking irrespective of the manner in which the municipality acquired it.

I would reverse and remand with directions to ascertain the full value of the property at the time of the acquisition of the property and limit the judgment to such amount.

---

[2] Emphasis supplied.