OKLAHOMA CITY v. LOCAL FED-
ERAL SAVINGS & LOAN ASS'N et al.

No. 29605. Feb. 9, 1943.

Rehearing Denied March 9, 1943.

134 P. 2d 565.

A. L. Jeffrey, Municipal Counselor, Warren W. Connor, Asst. Municipal Counselor, and W. H. Brown, Special Municipal Counselor; all of Oklahoma City, for plaintiff in error.

W. K. Garnett and Chas. H. Garnett, both of Oklahoma City (Busby, Harrell & Trice, of Ada, of counsel), for defendant in error Local Federal Savings & Loan Association.

Paul G. Darrough and Bland West, both of Oklahoma City, for defendant in error C. N. Bassett.

Lewis R. Morris, County Atty., and B. C. Logsdon, Asst. County Atty., both of Oklahoma City, amici curiae.

SMITH, Special Justice. This is a proceeding in condemnation by the Local Federal Savings & Loan Association, the alleged owner of certain real property, against the city of Oklahoma City to assess damages resulting from the appropriation of the premises by the city under the power of eminent domain (secs. 11931, 11933, 11935, O. S. 1931, 66 Okla. Stat. Ann. §§ 53, 55, 57). C. N. Bassett filed his petition in intervention alleging ownership of the property and seeking like relief. Judgment was for the intervener, and the plaintiff and defendant have appealed.

The land in question is described as the north 40 feet of lots 1 and 2, block 36, city of Oklahoma City, and constitutes a portion of an area commonly referred to as the civic center, and formerly occupied by a railroad company under a grant from O. T. Bassett. The city purchased the premises from the railway company and went into possession under the deed in December, 1930. The plaintiff as the alleged remote grantee of O. T. Bassett's reversionary interest, and the intervener as only heir of the said O. T. Bassett, now assert their respective claims and

exclusive title thereto, and each seeks damages against the city for the alleged appropriation as aforesaid.

The claim of reversionary title is founded upon certain provisions contained in the deed from O. T. Bassett to the railway company. The deed was dated April 16, 1891, and the material portion thereof reads as follows:

"Witnesseth that the said party of the first part for and in the Consideration of the sum of one dollars to him in hand paid by the said party of the second part the receipt whereof is hereby confessed and acknowledged does by these presents Remise Release and Quit Claim unto the said party of the second part and to its successors and assigns all his right title interest claim and demand in and to the following described tracts pieces and parcels of land situated lying and being in the County of Oklahoma Territory of Oklahoma namely forty feet off the north end of lots No 1-2 in Block 36 . . . in the City of Oklahoma and County aforesaid being intended for the use and occupation for said second party its successors and assigns as and for its right of way for the construction operation and maintenance of its railroad and business at or upon the land hereby released and quit claimed, Provided that in case of abandonment of said premises by said second party its successors and assigns for the purposes above mentioned the same shall revert to the grantor their heirs or assigns Together with all and singular the tenements hereditaments and appurtenances thereunto belonging or in anywise appertaining."

O. T. Bassett was at that time owner of all of said lots 1 and 2.

Shortly after the execution of the above deed, O. T. Bassett died, leaving the intervener C. N. Bassett as his only heir. On April 16, 1898, C. R. Morehead, as guardian of the intervener, who was then a minor, executed a guardian's deed to L. F. Kramer purporting to convey all right, title, interest, and estate of the intervener in and to lots 1 and 2 without reservation or exception.

Thereafter Kramer conveyed an undivided one-half interest in and to all of said lots to Whit M. Grant without mentioning the grant to the railroad company. Then Kramer and Grant conveyed all the lots in like manner to Harry A. Gable and Frank B. Zigler.

In 1905 the intervener, then an adult, quitclaimed to Gable and Zigler all his right, title, and interest in and to said lots, describing them as follows:

"Lot number one (1) and Lot number Two (2) in block number thirty-six (36) in Oklahoma City according to the recorded plat thereof. Except forty feet (40) off of the north end of said Lots heretofore conveyed to the C. O. and G. R. R. Company."

Plaintiff derived its present title through mesne conveyances from Gable and Zigler. The deed conveyed to it all interest in the property therein described, as follows:

"Lot One (1) and Two (2) in Block Thirty-six (36) in the City of Oklahoma City, as the same appears from the original plat and survey on file in the Register of Deeds office in said County and State, excepting forty (40) feet off of the North end of said lots conveyed to the Choctaw Coal and Railway Company."

The plaintiff Building and Loan Association asserts that the deed from O. T. Bassett to the railway company conveyed a base, qualified or determinable fee, leaving in the grantor a reversionary interest to take effect upon cessation of the use for which the land was conveyed; that said interest so reserved constituted a valuable property right or estate of inheritance and was alienable or assignable, citing numerous decisions, textbooks and statutes. It bases its present claim of title to the north 40 feet of said lots on the theory that each of the foregoing conveyances, commencing with the guardian's deed conveying all of said lots to L. R. Kramer, was sufficient to pass the reversionary estate in said north 40 feet to the respective grantees, ending with the plaintiff.

As shown above, all of said deeds, except the guardian's deed, conveyed all of lots 1 and 2 "except 40 feet off of the north end of said lots heretofore conveyed to C. O. & G. R. R. Co.," or words to that effect. Plaintiff says that this exception in the deeds was not sufficient to exclude the reversionary interest in the north 40 feet from the operation of the grant, but was inconsistent with the plain intent expressed in each deed to convey all the lots subject only to the railway company's present right of use and occupancy.

Before proceeding with the contentions of the other parties, we may say here that the plaintiff association has failed to establish any right, title, or interest in and to the premises. The deed from O. T. Bassett conveyed, as plaintiff says, a base, qualified or determinable fee, but it was a determinable fee subject to reverter upon condition subsequent. Such a reservation does not constitute an estate or interest in land and may be recovered upon the happening of the contingency by the grantor or his heirs by re-entry only.

Deeds containing provisions of the general character of that contained in the deed from O. T. Bassett to the railway company ordinarily convey one or the other of two distinct estates. They may convey a determinable fee upon condition subsequent or a determinable fee upon conditional limitation, depending entirely upon the legal purport of the grant as gathered from the language employed. There is a very real distinction between these two estates; and the rights of the grantors, their heirs and assigns, are materially different. The occurrence of the condition subsequent will serve to defeat the estate conveyed, but re-entry is required on the part of the grantor or his heirs, while an estate on conditional limitation expires with the limitation, or, that is to say, at the termination of the grant, and reverts ipso facto to the grantor or his heirs without re-entry. The following statement in respect to this question is found in 18 C. J. 301, § 281:

"A determinable fee may either arise from and be dependent upon a condition, or arise from a limitation, the essential difference being that, in the case of a condition, the estate is not terminated ipso facto by the happening of the event upon which it may be defeated, while in the case of a limitation, it passes at once by way of reverter to the grantor, or, in the case of a limitation over, to the person to whom it is limited, upon the happening of the event which fixes the limitation."

See, also, 18 C. J. 352, § 367; 10 R. C. L. 652.

Had the deed in the instant case specifically granted the land as long as used for railroad purposes, the estate conveyed would have been a determinable fee upon conditional limitation. But the deed in question was an outright conveyance of all the "right, title, interest, claim and demand" of the grantor in and to the property, with an added clause merely providing for reverter on cessation of the use therein named. In the case of a limitation the grant is for a time, limited on a condition; in the case of a condition subsequent the grantor conveys all his estate with an added provision for forfeiture or reverter upon a condition. The following statement is found in 19 Am. Jur. 496:

"The words 'so long as,' or 'during the time that,' the property is used for a certain purpose usually create an estate subject to determination upon conclusion of that use, rather than a fee with condition subsequent."

In Mouat v. Seattle, etc., Ry. Co., 16 Wash. 84, 47 P. 233, the court, when considering a deed containing an added clause providing for reverter for nonuser, held:

"A deed of general warranty to a railroad company contained a condition that, 'in case said land shall cease to be used for railroad purposes, the same shall revert to the first parties, their heirs and assigns.' Held, that the deed vested in the railroad company an es-

tate on a condition subsequent, and not on a conditional limitation."

A fair distinction between a condition and a limitation as considered here is found in Fall Creek Tp., etc., v. Shuman, 55 Ind. App. 232, 103 N. E. 677. There the court had under consideration a deed granting land so long as used for a particular purpose. The grantor in the deed assigned his reversionary interest to the defendant, and, in determining the latter's rights in the property, the court held as follows:

"Where defendant's predecessor in title granted unto the trustees of a township and their successors in office one-fourth of an acre of land 'so long as used for school purposes,' the grant was on a conditional limitation and not on a condition subsequent, and hence upon abandonment will pass to defendant, his grant including the land in question, for no re-entry is necessary in case of a conditional limitation, the happening of the condition being the limit of the conveyance."

In the body of the opinion the distinction above mentioned is drawn as follows:

"It is stated in Washburn on Real Property that the distinction between a condition subsequent and a conveyance with a limitation upon the title is technical, but clear. An example may be given by changing somewhat the language of the deed in controversy. If the original grantor had stated in terms that the land was conveyed to the township to be used for school purposes, it would have been a condition subsequent, and in order to divest the township of title, there must have been a re-entry of the original grantor or his heirs. But the language in this deed, 'so long as the same is used for school purposes,' divests the title ipso facto upon the happening of that event, and appellee in this case, holding the legal title by conveyances from his grantors, is entitled to recover."

Here, the provisions of the deed conform in every legal aspect with the example of a condition subsequent as given in the above language. They did not create an estate "as long as" or "so long as" used for railroad purposes, but created an estate in fee with an added clause to the effect that the land was for the use of the grantee as a right of way.

In 19 Am. Jur. 522, it is said:

"Conditions subsequent are those which in terms operate on an estate conveyed or devised and render it liable to be defeated for breach of condition. The title passes to the grantee, subject to divestiture on failure to perform the condition. A test uniformly adopted by the American courts in ascertaining that a condition is a condition subsequent is that if the act, the performance or nonperformance of which constitutes the condition, does not necessarily precede the vesting of the estate, but may accompany or follow such vesting, which result is to be collected from the whole instrument, the condition is subsequent."

Numerous cases are cited in support of this text. Under all recognized rules and definitions and by every test the deed before us conveyed a fee on condition subsequent.

There is no need for extended discussion of the common-law rule here because the point is governed by express provision of the Oklahoma statute in force at the time the deed from O. T. Bassett to the railroad company was executed. This deed is dated April 16, 1891, and hence, as to the quality of the estate, is governed by the Oklahoma Statutes of 1890. Section 6651, page 1178, of those statutes, found in chapter 86, on the subject of "Title Transfers," is as follows:

"A mere right of re-entry, or repossession for breach of a condition subsequent, cannot be transferred to any one except the owner of the property affected thereby."

This statute by necessary implication recognizes the common-law characteristics of a grant of a fee upon condition subsequent and specifically adopts the common-law rule that the right of re-entry or repossession under such a

grant is not alienable to any one except the owner of the fee. The Bassett deed as to the quality of the estate must be construed in accordance with that statute.

"Deeds are to be construed according to the law in force at the time they are executed." 18 C. J. 251.

See, also, Burnett v. Piercy, 149 Cal. 178, 86 P. 603; Frame v. Humphreys, 164 Mo. 336, 64 S. W. 116; Brown v. Inhabitants of Peabody (1917) 228 Mass. 52, 116 N. E. 958; Stuart v. Fox (1930) 129 Me. 407, 152 Atl. 413.

The Bassett deed was perhaps a deed of indenture rather than a deed poll, but even if a deed poll, under modern usage it was a bilateral contract (16 Am. Jur. 438, 645) by which the grantee, in consideration and as a condition of the grant, contracted and agreed with the grantor that upon the abandonment of the premises for railroad purposes its estate and title would revert to him or his heirs. The rights of both parties under such contract were fixed and vested under the law in force at the time of its execution, and would remain so regardless of a subsequent repeal or change of the controlling statute.

Re-entry may be made in a case of this character, after the right has accrued, upon three days' notice, or by action without such notice, sections 11772, 11773, O. S. 1931, 60 Okla. Stat. Ann. §§ 47, 48. But under the common-law rule and the statutory provision above set forth, that right is confined to the grantor and his heirs. Mouat v. Seattle, etc., Ry. Co., supra; Stevens v. Galveston, etc., Ry. Co., 212 S. W. (Tex. Com. App.) 639; Trustees of Calvary, etc., Church v. Putnam, 224 N. Y. S. 651; 23 R. C. L. 1103, § 6; Wagner v. Wallowa County, 76 Ore. 453, 148 P. 1140.

In 23 R. C. L. 1103, § 6, it is said:

"It is, of course, well settled that a conveyance or devise of a fee on a condition subsequent creates a possibility of reverter in the grantor or the heirs of the devisor. Until the breach of the condition and a reverting of the estate through re-entry the whole title is in the grantee. While there is a possibility of reverter in the grantor, there is no reversion. This possibility is neither a present nor a future right, but a mere possibility that a right may arise on the happening of a contingency, and, being a mere possibility, it is not an estate."

The rule was stated in Trustees, etc., v. Putnam, supra, as follows:

"Under grant on condition subsequent, grantee takes merely a base or determinable fee, but nothing remains in grantor or his heirs, except the right to take advantage of a breach of the condition, a mere 'possibility of reverter,' which is neither an estate, an interest in real property, an assignable or devisable chose in action, nor a possibility coupled with an interest."

The interest reserved to the grantor in a deed conveying a determinable fee on condition subsequent is merely a power, a power to declare a forfeiture of the estate upon condition broken. A power is defined by our statute as "An authority to do some act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner granting or reserving such power might himself perform for any purpose." Section 11839, O. S. 1931, 60 Okla. Stat. Ann. § 183.

The law relating to the creation of such powers, and attempted assignments thereof, is well summed up in the American Law Institute's Restatement of the Law of Property, vols. 1 and 2. The definition of a determinable fee on condition subsequent is found in section 24 thereof. The estate created by the deed in the instant case comes well within the definition contained in said section. It is there said that the power reserved to the grantor is more properly to be designated as a "power of termination" than a "right of entry." And it is further stated that the estate will continue in the grantee until the power of termination is exercised.

In view of the foregoing, we must hold that the grantor in a deed conveying a determinable fee upon condition subsequent, with reverter to himself and his heirs in event of breach of the condition, retains in himself neither an estate in real property nor a possibility coupled with an interest, but merely the power on the part of himself and his heirs to revoke or terminate the estate by re-entry upon forfeiture for breach of condition.

The trial court properly denied plaintiff's claim of title.

Plaintiff cites the late work of Simes on the Law of Future Interests as authority for the assertion that the power in the instant case was assignable. We find it unnecessary, however, to decide that question in view of our holding hereinafter with reference to the deeds.

Referring now to the claim of the intervener, he asserts that as heir of the grantor in the railway deed he was the owner of a possible reverter, and that he has neither conveyed nor forfeited the right to claim the same. He says, in effect, that if the right of reverter was assignable, the guardian's deed and the quitclaim deed signed by him were not sufficient as assignments thereof; that the guardian's deed for various reasons was void, and that the quitclaim deed properly excluded the north 40 feet of said lots from the grant.

In connection with this particular question the city contends that the right of reverter did not constitute an assignable interest, but that the intervener's deeds aforesaid were sufficient to assign that interest if it has been assignable, and that under the law such an assignment to one not the holder of the determinable fee served to forfeit the right of re-entry. Among the authorities cited is Wagner v. Wallowa County, supra, wherein the Oregon court had under consideration a grant upon condition subsequent, and the effect of an attempted assignment of the right of re-entry to one other than the owner of the determinable fee. The court had the following to say with reference to that question:

"As we have seen under the authorities, the plaintiff had nothing at the time which he could convey, because the estate had passed from him entirely, and there had been no breach of the condition upon which he could re-enter; and while in the aspect of affirmatively conveying an estate he accomplished nothing, yet as the waiver of the condition for once and all it has the effect to prevent his ever asserting a right of entry."

But we do not need to pass on this controversial point here, for, even if we agree with the city that an assignment of the right of re-entry, good otherwise, would ordinarily serve as a waiver of the right and prevent the grantor from ever asserting it, still we do not agree that the intervener's deeds in this case were sufficient to waive his power as heir of the original grantor to terminate the estate granted to the railroad company.

The complete record of the sale proceedings in the county court of Oklahoma county which culminated in the guardian's deed was introduced in evidence by the plaintiff. These proceedings appear to be regular except in two respects. First, the return of sale of real estate was signed and verified by one N. F. Gates as agent for the guardian, which fact is also recited in the order confirming the sale, and, second, the value of the property sold is shown by inventory and appraisement filed by the guardian to be $5,000 and it was sold at private sale for $656. Section 1356, Statutes of 1893, provides that real estate belonging to minors shall not be sold at private sale through the probate court for less than 90% of its appraised value. It was identical with section 424, Title 58, O. S. 1941. Under that statute, and similar provisions governing the sale of lands belonging to estates of decedents, it has been repeatedly and uniformly held by this court that the sale of the property at private sale for a sum less than 90% of the appraised value thereof renders

the sale void. Winters v. Oklahoma Portland Cement Co., 65 Okla. 132, 164 P. 965; Oklahoma Portland Cement Co. v. Winters, 77 Okla. 36, 186 P. 468; Pritchett v. Jenkins, 111 Okla. 30, 238 P. 484; Glory v. Bagby, 79 Okla. 155, 188 P. 881. Since the guardian's deed was void because based on a private sale at less than 90% of the appraised value of the ward's property, we consider it unnecessary to dwell upon the effect of the return of sale having been made by the agent Gates.

Plaintiff contends that on the whole record of the sale it appears that the property was actually appraised at $500 and that the $5,000 figure appearing in the inventory and appraisement is an error. Such an attack upon the record of the appraisement is not permissible. To make the correction suggested by plaintiff would in effect be a re-appraisement of the property by this court. This we have no power to do. Sharpe v. McDonald, 106 Okla. 175, 233 P. 430. In Abraham v. Lozier, 110 Okla. 221, 237 P. 85, it was held that it is not permissible to vary or contradict the facts disclosed by the record of the proceedings had in a guardianship sale.

Plaintiff also contends that an attack by the intervener on the validity of his guardian's deed is barred by the statute of limitations .The defense of limitation was first urged by plaintiff after the judgment was rendered and in exceptions to the findings of fact and conclusions of law. It was not asserted in the plaintiff's pleadings. The defense of limitation was waived when not pleaded, and it cannot be raised for the first time by exceptions to findings of fact and conclusions of law after the rendition of judgment. Morrissey v. Shriver, 88 Okla. 269, 214 P. 702; Buchner v. Baker, 65 Okla. 130, 164 P. 659; Kurz v. Stafford, 135 Okla. 121, 274 P. 674; Bancroft Code Pleadings, §§ 239, 333; Pomeroy's Code Remedies (4th Ed.) §§ 589, 590; Bliss on Code Pleadings (3rd Ed.) § 355; 37 C. J. 1212-1213, secs. 716, 718; 17 R. C. L. 881.

The plaintiff, and also the city, contend that the quitclaim deed from intervener to Gable and Zigler conveyed all and whatever estate or interest the grantor had in the lots described notwithstanding it contained the clause "except forty feet (40) off the north end of said lots heretofore conveyed to the C. O. & G. R. R. Co." The rule announced in Cuneo v. Champlin Refining Company, 178 Okla. 198, 62 P. 2d 82, and Jennings v. Amerada Petroleum Corporation, 179 Okla. 561, 66 P. 2d 1069, is relied upon. In the Cuneo Case it is held that where a grant of land abutting on a railroad right of way and described as the land lying south of the right of way is made by the one who owns the fee under the right of way, and who after the grant owns no part of the land on either side of the right of way, the grantor is presumed to have conveyed his interest in the right of way, unless a contrary intention clearly appears or is expressed. Two warranty deeds were involved in that case and there was no exception in either deed.

In the Jennings Case the deed involved was a warranty deed to 160 acres of land "less the right of way of the Little River Drainage Ditch containing 13.51 acres and except right of way of the M. K. & T. Ry. Co." The court held that the title to the land underlying the right of way passed by the deed, for that the exception quoted was one of limitation and not of reservation and that the terms "less the right of way" and "except the right of way" have a well-defined and accepted meaning. It adhered to the rule in the Cuneo Case that where the fee of land abutting a strip set apart as a right of way is conveyed, the servient estate under the strip is also conveyed, "unless it is excluded by clear, unequivocal and unmistakable language." This is the general rule. 9 C. J. 195; Thompson on Real Property (Perm. Ed.) § 470.

The intervener contends that by the terms of the quitclaim deed the north 40 feet of the lots is excluded from the grant by clear, unequivocal and unmistakable language. With this we agree.

The language of the exception is not of the railroad right of way, but of the very land itself.

"The office of an exception is to take something out of the thing granted that would otherwise pass." 18 C. J. 340.

"An exception eliminates or excludes from the operation of the terms of the granting clause that which is embraced in the terms of the exception and which would, in the absence of the exception, pass by the terms of the grant. In the case of an exception, the deed as a whole passes what is embraced in the terms of the grant less what is included in the exception. Whatever is excluded from the grant by exception remains in the grantor as of his former right." 16 Am. Jur. 609.

In Porter v. Warner-Caldwell Oil Co., 183 Okla. 1, 80 P. 2d 252, it was said:

"An exception in a deed withholds from its obligation some part or parcel or thing which but for its exception would pass by the general description. Edwards v. Brusha, 18 Okla. 234, 90 P. 727. The terms 'reserving' and 'excepting' are used interchangeably, and their technical meaning will give way to the manifest intent."

In Voss v. Thompson, 105 Okla. 238, 232 P. 392, the deed conveyed a described 160 acres of land "except two acres out of the southwest corner of the southwest corner of said land deeded to Fair Gin Company for their use in operating a gin plant." The court held this to be a clear exception of the two acres from the grant, saying that "Said deed is plain and not susceptible of construction in respect to said two acres." The similarity of the language of the exception in that case and the language being considered in the present case is apparent. In both the exception was of the grant itself, not of the easement or estate of the occupier of the excepted tract, as in the Jennings Case. If the language of the exception in Voss v. Thompson is so clear and plain that it is not susceptible of construction, we feel justified in ascribing the same effect to the language of the exception in the present case. There is also abundant authority for this from other jurisdictions. Spencer v. Wabash R. Co., 132 Iowa, 129, 109 N. W. 453; Reynolds v. Gaertner, 117 Mich. 532, 76 N. W. 3; Penn v. Holland (Tex. Civ. App. 1937) 105 S. W. 2d 351; Rushton v. Hallett, 8 Utah, 277, 30 P. 1014; Pritchard v. Lewis, 125 Wis. 604, 104 N. W. 989, 110 A.S.R. 873, 1 L.R.A. (N. S.) 565.

We hold that because the guardian's deed was void and hence a nullity and because of the exception in the deed to Gable and Zigler, neither one constituted an attempt of the intervener to alienate his right to repossess the land upon condition broken.

It follows that upon abandonment of the premises by the railroad company, the intervener's right to terminate the estate accrued. Such abandonment did not serve, ipso facto, to place the fee-simple title in the intervener. The railroad's title subsisted so long as there was no re-entry or action for possession instituted on the part of the intervener. But before the intervener had an opportunity to act, the railroad had relinquished its possession to the city. The city asserts that it acquired the property for park purposes and now holds the same pursuant to its power of eminent domain. In such case, regardless of the manner in which it obtained its possession, an attempt at re-entry by the intervener would have been in vain, for, where a municipality has taken possession of real property for any purpose in which it may exercise its power of eminent domain, condemnation proceedings to assess damages is the remedy of the landowner. Oklahoma City v. Wells, 185 Okla. 369, 91 P. 2d 1077.

The defendant city further contends that the taking of the property from the railroad company was actually accomplished through the process of condemnation as provided by statute. Section 10051, O. S. 1931, 27 Okla. Stat. Ann. § 5; secs. 11931, 11935, O. S. 1931, 66 Okla. Stat. Ann. §§ 53, 57. These sections authorize a municipality to take real property for public use by agreement with the owner thereof, or, if the

owner refuse to grant the property for the particular use, either party may institute condemnation proceedings to assess the damages. The city takes the position that its title to the premises in question was acquired from the railroad company by agreement in lieu of formal condemnation proceedings and in contemplation of the exercise of its ultimate power of eminent domain, and that the effect of its acquisition was actually the same as if the property had been condemned by legal process. There is evidence that the city for some years had made various attempts to persuade the railroad company to abandon the premises in question and to convey the same to the city, and that the city officials had contemplated an attempt to condemn the property.

Certain authority is cited in support of the above contention.

It is contended further that the railroad company as the owner of the determinable fee was the only party entitled to compensation in condemnation since it was the owner of the entire estate in the land (Jordan v. Goldman, 1 Okla. 406, 34 P. 371); that the power to terminate the estate is not property, in the constitutional sense, entitling the holder of such power to compensation in such case. Many authorities are cited. The rule announced therein seems fairly stated in 18 Am. Jur. 865, as follows:

"When land which had been conveyed in fee to its present holder upon condition that it be devoted to a certain use is taken by eminent domain for a different use, whether the original conveyance is regarded as in trust for the grantor, as a determinable fee, or as a grant upon condition subsequent, the grantor is not entitled to compensation. As the interest of the grantee is a fee simple, the entire estate is in him, and the rights of the grantor, whatever they may be called, and however they might be enforced in equity in case of an unlawful use of the property, are not an estate or interest in the land, and so are not property in the constitutional sense."

In the Jordan Case, above, the territorial Supreme Court said that all the estate in the land was in the owner of the determinable fee. Perhaps it may be correct, therefore, to say that for the purposes of condemnation the owner of the determinable fee is the only interested and necessary party to consider in connection with the question of damages.

But, assuming that the process by which the city acquired the land would ordinarily be considered equivalent to condemnation and not merely bargain and sale, we cannot agree that condemnation was appropriate under the facts and circumstances of this case. Property presently devoted to a public use cannot generally be taken for another and wholly different public use pursuant to the power of eminent domain.

There are exceptions to this rule, but the exceptions apply only in those instances where the second taking is necessary to the public welfare.

Under our statutes, above, the railroads and municipalities are granted equal powers of eminent domain for their respective requirements. Neither is superior to the other, and in the absence of statutory authority, express or necessarily implied, neither may exercise the power of eminent domain. 18 Am. Jur. 650. And the fundamental power to exercise the right to so acquire property lies dormant in the state until the Legislature by specific enactment designates the occasion, the modes, and the agencies by and through which it may be placed in operation. Harn v. State ex rel. Williamson, Atty. Gen., 184 Okla. 306, 87 P. 2d 127.

Our statutes do not authorize a municipality to condemn railroad property for park purposes, and there is nothing in the statutes from which to imply such power. We do not say that the city may not acquire sufficient railroad property for the construction of street crossings, but there is no rule of law sanctioning the taking of railroad property for purposes not necessary to the public welfare. The general rule is stated in 18 Am. Jur. 723, as follows:

"While it is settled that the Legislature may constitutionally authorize the taking of property devoted to a public use for a different public use, where land has been once appropriated to an important use, the power of eminent domain cannot be invoked for the purpose of taking it for a second public use which is wholly inconsistent with the former and which would entirely supersede and destroy the use to which the land is already devoted, or which would materially and substantially interfere with such use, unless the right is expressly conferred by statute or arises therefrom by necessary inference."

See, also, 20 C.J. 611; 2 L.R.A. (N.S.) 227-228; In the Matter of Boston & Albany R. R. Co., 53 N. Y. 574; The Prospect Park and Coney Island R. R. Co. v. Williamson, 91 N. Y. 552; City of Seymour v. Jeffersonville, M. & I. R. Co., 126 Ind. 466, 26 N. E. 188.

In the last-cited case the Indiana court had the following to say on this question:

"We do not doubt the power of the Legislature to authorize the condemnation of land owned and occupied by a railroad company. The question here, however, is not as to the existence of that power in the Legislature, but the question is as to whether that power has been exercised. It is settled beyond controversy that land already appropriated to a public use cannot be appropriated to another public use unless the statute clearly confers authority to make a second seizure."

That rule obtains in almost all jurisdictions where the question has been considered. See Annotation, 41 L.R.A. (N. S.) 829, 830.

Of the cases cited by the city, the one most clearly in point is Joint School Dist., etc., v. Bosch, 219 Wis. 181, 262 N. W. 618. There the county condemned a school site for highway purposes. The school district and the owner of a contingent remainder in the premises claimed the condemnation funds. The school was awarded all except a nominal sum which was given to the owner aforesaid. The legality of the condemnation proceedings, or the superior power of eminent domain in the county, was not in question. The case is, therefore, not in point.

The city has wholly failed in its contention that the property was acquired by condemnation under its superior power of eminent domain. It was without statutory power to so acquire the premises. Its acquisition thereof was merely by an attempted purchase, which could in no way defeat the right of the intervener to terminate the estate when the use of the railroad ceased.

The judgment of the trial court is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, WELCH, and HURST, JJ., concur. OSBORN, BAYLESS, and DAVISON, JJ., dissent.

Hon. GOMER SMITH was named Special Justice to sit for Mr. Justice ARNOLD, who tried the case below.

OSBORN, J. (dissenting). The court has given careful and repeated consideration to this cause and to several difficult questions therein presented for determination. A majority of the court have arrived at certain determinative conclusions with which I am compelled to disagree, and, hoping that a brief resume of my views may be of service, I shall briefly outline my views.

I agree that the original deed from O. T. Bassett to the railroad company, dated April 16, 1891, conveyed to said railroad company a determinable fee upon condition subsequent, and that the character of the estate conveyed and of the interest remaining in the grantors is determinable by the law as it existed at that time. At that time section 6651, chapter 86, Stats. of 1890, was in force as recited in the majority opinion. However, the Legislature thereafter adopted the Code of 1893, and said statutory provision was omitted from said Code and has not been a part of our statutory provisions since that time. We must look, therefore, to the statutory provisions in existence at the time of the at-

tempted conveyances herein to determine the right of those who retained this possibility of reverter to convey the same.

On April 16, 1898, C. R. Morehead, as guardian of Charles N. Bassett, a minor, executed a guardian's deed to L. F. Kramer pursuant to an order of sale made on March 21, 1898, by the probate court of Oklahoma county, pursuant to an order of confirmation by said court made on April 16, 1898, said deed being recorded on April 10, 1901, and same purporting to convey "all the right, title, interest and estate of the said Charles N. Bassett, Minor, at the time, in and to all the certain lots . . . ." On February 10, 1905, and after said minor had become of legal age, he executed a quitclaim deed purporting to convey:

". . . all his right, title, interest, estate in claim and demand both at law and in equity of, in and to all

"Lot number one (1) and Lot number two (2) in block number thirty-six (36) in Oklahoma City according to the recorded plat thereof. Except forty' feet (40) feet off of the north end of said lots heretofore conveyed to the C.O. and G. R. R. Company, together with all and singular hereditaments and appurtenances thereunto belonging."

It is my view that whether said guardian's deed be valid, voidable, or wholly void, the statute of limitations prevents the recovery of said property, or any interest or right therein, by the said Charles N. Bassett, in that his action attempting to attack said guardian's deed was not commenced until the year 1938. Tit. 12, sec. 93, subdivision 2, O. S. A. (sec. 99, O. S. 1931); Tit. 58, sec. 836, O. S. A. (sec. 1444, O. S. 1931); Dodson v. Middleton, 38 Okla. 763, 135 P. 368; Sandlin v. Barker, 95 Okla. 113, 218 P. 519; Walker v. Hatcher, 109 Okla. 283, 231 P. 88; Stolfa v. Gaines, 140 Okla. 292, 283 P. 563; Givens v. Jones, 158 Okla. 124, 12 P. 2d 892, and many other cases to like effect.

Moreover, under the state of the pleadings in this case and the contentions of the parties, I am of the view that the plaintiff was not under the necessity of specifically pleading the statute of limitations. Plaintiff was asserting a paramount right by reason of claim of a paramount title against the city of Oklahoma City. Intervener, C. N. Bassett, was claiming a like right against the city of Oklahoma City. The rights of the three parties were presented to the court for adjudication. I am of the view that this constitutes an exception to the general rule regarding the necessity of pleading the statute of limitations. 19 C. J., p. 1146, § 172; Wiggins v. Powell, 96 Kan. 478, 152 P. 765.

But if I am in error as to the statute of limitation having barred Bassett herein, then I assert that he is barred by reason of the quitclaim deed above mentioned. Said deed conveyed all of his right, title, and interest in said lots, including the possibility of reverter theretofore retained by his ancestor, unless he excluded said possibility of reverter from the terms of said conveyance "by clear, unequivocal and unmistakable language." This he did not do. Cuneo v. Champlin Refining Co., 178 Okla. 198, 62 P. 2d 82; Jennings v. Amerada Petroleum Corp., 179 Okla. 561, 66 P. 2d 1069; Shell Petroleum Corp. v. Hollow (C. C. A.) 70 Fed. 2d 811; Shell Petroleum Corp. v. Ward (C. C. A. 5th) 110 Fed. 2d 778; Kansas City Southern Ry. Co. v. Marietta Oil Corp. (C. C. A. 5th) 102 Fed. 2d 603; Barker v. Lashbrook, 128 Kan. 595, 279 P. 12.

It is intimated, however, in the majority opinion that by reason of said quoted statute (sec. 6651, Code of 1890), and by reason of restrictions at common law, the interest so reserved by the original deed was incapable of alienation. This technical doctrine of the common law, growing out of the tenure and conveyance of real property under the old feudal law, is historically interesting. For a very full and complete collection of the cases and a discussion of the common law, and of the various

holdings of the various courts and of the inconsistencies therein, brought up to date, see the annotations contained in 109 A. L. R. 1148, 117 A. L. R. 563, and 135 A. L. R. 576.

Section 1790, O. S. 1931 (21 O. S. 1941 § 102), provides "The term 'real property' includes every estate, interest and right in lands, tenements and hereditaments." We call attention to sections 11753, 11754, 11755, and 11765, O. S. 1931 (60 O. S. 1941 §§ 28, 29, 30, and 40). These statutes, in my judgment, were intended to abrogate the technicalities of the common law relating to conveyances of an interest of this kind. See Knight v. Kimble, 99 Okla. 48, 225 P. 909; Miller v. Miller, 91 Kan. 1, 136 P. 953; and Maynard v. Hustead, 185 Okla. 20, 90 P. 2d 30.

I am, therefore, of the view that there was no legal impediment to the conveyance of said interest either by the guardian or by C. N. Bassett after arriving at majority, and that he, in fact, conveyed whatever interest he had in said property.

I deem the fifth syllabus wholly irrelevant to a determination of this case for the simple fact is that under the record in this case the city did not acquire said property by eminent domain, but whatever interest it acquired, it took by voluntary conveyance from the railroad company.

It follows from the above that I am of the view that the Local Federal Savings & Loan Association of Oklahoma City is entitled to prevail herein, and that neither C. N. Bassett nor the city of Oklahoma City has any right superior to said association.

For these reasons, I respectfully dissent.

DAVISON, J., concurs in this dissent.

BAYLESS, J. (dissenting). I dissent to the opinion adopted by the majority of the court.

I am of the opinion the rule announced in the fifth paragraph of the syllabus is erroneous and will be particularly unfortunate in its effect upon the political subdivisions of the state in their efforts to perform the functions assigned to them under our Constitution.

The modern rule, and certainly the better rule, is that municipalities have the power, under general grants of the right to exercise eminent domain, to condemn, for the use of the public, property already devoted to a public use.

The court's opinion lays stress upon the lack of power of Oklahoma City to acquire the property involved for park purposes. This is an obvious misconception of the legal purpose clearly shown by this record to have been intended by Oklahoma City. It is an admitted fact that the purpose Oklahoma City had in mind in acquiring this property was to relocate the railroads then using it. Its motive was to end an almost intolerable condition that had arisen within the city by reason of the existence of this busy line railroad in the very heart of the city. Here a city of upwards two hundred thousand people had its very business and civic body cut in half by a line of railroad that was in hourly use. This railroad ran parallel to, less than two blocks away from, Main street, the most congested street in Oklahoma City, and also crossed at least four of the main business streets of the city running north and south. The moving of trains across these streets and other streets at all hours of the day and night constituted a threat to the lives of the people, seriously interfered with and congested traffic, and created a continued annoyance to the business district. The fundamental purpose for voting over four million dollars in bonds to acquire this property arose from a desire, and a positive necessity, to relieve this situation. That the property so acquired might afterwards be used by the city for park purposes, or any other purpose, was wholly incidental. To deny Oklahoma City the power to

condemn for such a purpose on the assumption that the city was in reality acquiring this property for park purposes is to overlook the primary purpose of Oklahoma City. The authorities cited and relied on by the court to deny Oklahoma City this power are not analogous when the substantial objective of the city is considered.

I am further of the opinion that the things done by Oklahoma City in this matter amounted to an exercise of the power of eminent domain and a taking thereunder. This being so, the general rule is that a mere possibility of reverter or expectancy such as Bassett claims in this instance had no allowable value in such taking in Oklahoma City, and the vesting of the prospective interest was merely postponed.