EMINENT DOMAIN
1. Where an entity expends only state or local funds on a project the provisions of Title 63 O.S. 1085 [63-1085] through 63 O.S. 1099 [63-1099] (1971) do not apply. 2. There is no state law which would prohibit advance payments to displaced persons under 63 O.S. 1092 [63-1092](a)(2) (1971). 3. Public utility companies which are vested with the right of eminent domain and which acquire property for a public project in which there is federal financial assistance are subject to the terms of Title 63 O.S. 1085-1099 [63-1085-1099]. 4. The provisions of 63 O.S. 1085-1099 [63-1085-1099] (1971) apply to public utility companies vested with the power of eminent domain which acquire private property for a public project involving federal financial assistance. The Attorney General has considered your request for an opinion to the following questions submitted to us in your letter: 1. If a State or local entity expends only State or local funds on a State or local project, do the provisions of Senate Bill 298 apply? 2. Under the "hardship provision" of Section 8(a) (2) that authorizes payment in advance to a displaced person; does this contravene any existing state law relating to expenditure of State funds? 3. Under the provisions of Section 12; are public utility companies that are vested with eminent domain powers subject to the provisions of Senate Bill 298, whether or not the eminent domain power is used or not to acquire the land? 4. If public utility companies are not vested with the power of eminent domain, can the State of Oklahoma delegate such power to the public utility companies? If answered in the affirmative, does SB 298 apply to the public utility company exercising such power of eminent domain? The provisions of SB 298 are now codified in the Oklahoma Statutes at Title 63 O.S. 1085 [63-1085] through 63 O.S. 1099 [63-1099] (1971). These statutes were effective July 1, 1971. In your first question you ask whether Title 63 O.S. 1085 [63-1085] through 1099 apply to a project where only State or local funds are expended. Your attention is directed to the following statutes: Title 63 O.S. 1085 [63-1085] (1971) provides: "The purpose of this act is to establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by any public project receiving federal financial assistance in any part thereof . . ." Further, 63 O.S. 1087 [63-1087](a) (1971) provides: "If a State agency acquires real property for public use in any federally assisted project, it shall make fair and reasonable payments to displaced persons and businesses as required by this act . . ." (Emphasis added) Therefore based on the language contained in Title 63 your first question must be answered in the negative. In your second question you ask whether advance payments to displaced persons under the hardship provision of Title 63 O.S. 1092 [63-1092](a)(2) (1971) contravenes any existing state law relating to expenditure of state funds. An examination of the Oklahoma Statutes in Title 62 dealing with public finance reveals no existing statute which would prohibit advance payments. Article II, Section 24 of the Oklahoma Constitution provides for compensation where private property is taken for public use. The section specifically provides in part: "Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. . ." Such constitutional language clearly contemplates that advance payments will be made in eminent domain proceedings. Therefore, your second question must be answered in the negative. In your third question you ask if public utility companies with the power of eminent domain are subject to 63 O.S. 1085 [63-1085] through 63 O.S. 1099 [63-1099] (1971) whether or not the eminent domain power is used to acquire the land. Title 63 O.S. 1096 [63-1096] (1971) provides: "A person, firm or corporation taking property by eminent domain shall pay relocation costs as is required of a state agency under the provisions of this act." (Emphasis added) By the terms of the above statute, only a taking by eminent domain requires the payment of relocation assistance. Further, under the terms of 63 O.S. 1085 [63-1085] (1971), supra, and 63 O.S. 1087 [63-1087] (1971) supra, such payments are required only where persons are displaced by a public project receiving federal financial assistance. It seems clear that public utilities who have been delegated the power of eminent domain, and who acquire land for public use by negotiation or voluntary conveyance are in effect exercising their power of eminent domain, notwithstanding the absence of formal legal proceedings. Under the terms of 27 O.S. 4 [27-4] (1971), 27 O.S. 6 [27-6] (1971), and 27 O.S. 7 [27-7] (1971) water-power companies, private persons or corporations, and persons or corporations, and persons or corporations which furnish light, heat or power by electricity or gas, respectively, are given the power of eminent domain "in the same manner and by like proceedings as provided for railroad corporations . . ." Title 66 O.S. 51 [66-51] (1971) et seq., contains the provisions governing the acquisition of land by railroads, which also are made applicable to those persons, firms, or corporations described in 27 O.S. 4 [27-4], 27 O.S. 6 [27-6], 27 O.S. 6 [27-6] [27-6] (1971), 66 O.S. 52 [66-52] (1971) provides: "Any railroad corporation may purchase and use real property for a price to be agreed upon with the owners thereof; or the damages to be paid by such corporation for any real property taken as aforesaid; when not agreed upon, shall be ascertained and determined as hereinafter provided." (Emphasis added) Thus it is clear that railroads and other public utilities described in Title 27, in acquiring land for public use, may do so by voluntary conveyance. In Marland v. Gillespie, 33 P.2d 207
a railroad purchased property to be used for a spur track location. In its first syllabus the Supreme Court of Oklahoma stated in part: ". . . A railroad corporation has the power to acquire fee-simple title to real estate in Oklahoma for railroad purposes by voluntary conveyance." See also Midland Valley R.R. Co. v. Arrow Industrial Manuf. Co., 297 P.2d 410. Notwithstanding the voluntary nature of the conveyance, where property is acquired by an entity vested with the power of eminent domain, for public use, such would constitute a taking of property by eminent domain within the meaning of 63 O.S. 1096 [63-1096] (1971). Further, the conclusion is apparent from a consideration of 63 O.S. 1085 [63-1085] (1971) which states the purpose of the Act: "The purpose of this act is to establish a uniform policy for the fair and equitable treatment of persons displaced by the acquisition of real property by any public project receiving federal financial assistance in any part thereof . ." (Emphasis added) The declared purpose states that the provisions thereafter should be made available to persons whose property is acquired for a public use. This would obviously include the acquisition of property for public use by negotiation. Therefore your third question must be answered in the affirmative. In your fourth question you ask whether the State of Oklahoma may delegate the power of eminent domain to public utility companies. Further, if such power of eminent domain is granted to the public utilities, you ask if the provisions of Title 63 O.S. 1085 [63-1085] through 63 O.S. 1099 [63-1099] (1971) apply to such public utility company exercising its power of eminent domain. Mac Q. Williamson, Attorney General for the State of Oklahoma, prepared a comprehensive introduction to the eminent domain statutes found in 27 O.S. 1 [27-1] et seq. The introduction at p. 348 provides in part: "Eminent domain is an attribute of sovereignty. Although Section 24 of Article 2 of the Constitution of the State of Oklahoma provides, in part, that 'Private property shall not be taken or damaged for public use without just compensation,' it is not a grant of power, but is a limitation upon the exercise of a power which is an attribute of sovereignty. "This sovereign power lies dormant in the state until the Legislature, by specific enactment, designates the occasions, the modes, and the agencies by and through which it may be placed in operation." See also Harn v. State ex rel Williamson,87 P.2d 127; Oklahoma City v. Local Federal Savings and Loan Ass'n of Okla. City, 134 P.2d 565; 29A C.J.S. Eminent Domain 21. Mr. Williamson's introduction goes on to state: "The Legislature of the Oklahoma Territory specifically granted the power of eminent domain to railroad corporations and prescribed a procedure for the exercise of the power so granted. These statutes were carried over into the laws of the State of Oklahoma. The first session of the Legislature of the State of — Oklahoma made such statutes applicable to all corporations having the right of eminent domain; and the twelfth session of the Legislature made them applicable also to the State of Oklahoma and its various educational, reformatory, penal and eleemosynary institutions, and all departments of the state having the power to purchase real property for public purposes. "Among the State 'departments' (as distinguished from 'institutions') having the statutory power to purchase real estate for public purposes performed by them are the following: Department of Highways, Oklahoma Variation Commission, Oklahoma Planning and Resources Board, Oklahoma Turnpike Authority, Southeastern State College of Oklahoma Housing Authority, State Game and Fish Department, acting through the State Game and Fish Commission, University of Oklahoma Housing Authority, and the War Veterans Commission. "The first session of the State Legislature specifically granted the power of eminent domain, 'in like manner as railroad companies,' to water power companies organized under the laws of this state, and to counties, cities, towns, townships, school districts or boards of education, and to all boards or officials having charge of cemeteries created and existing under the laws of this state. "The sixth session of the State Legislature specifically granted the power of eminent domain, to be exercised in the same manner and by like proceedings as provided for railroad corporations, to persons, firms or corporations organized under the laws of this state or authorized to do business in this state, to furnish light, heat, or power by electricity or gas, and to all other persons, associations or firms engaged in furnishing light, heat or power by electricity or gas." Thus it is apparent that the state, having the power of eminent domain, may and indeed has delegated such power to certain entities. Under the provisions of 63 O.S. 1096 [63-1096] (1971), supra, it is clear that firms or corporations taking property by eminent domain shall be subject to the provisions of 63 O.S. 1085 [63-1085] through 1099. Therefore, your fourth question must be angered in the affirmative. It is the opinion of the Attorney General that your first question be answered as follows: Where a state or local entity expends only state or local funds on a public project, the provisions of 63 O.S. 1085-1099 [63-1085-1099] do not apply. It is the opinion of the Attorney General that your second question be answered as follows: There is no state law which prohibits the advance payments to displaced persons pursuant to the hardship provision of 63 O.S. 1092 [63-1092](a)(2) (1971). It is the opinion of the Attorney General that your third question be answered as follows: The acquisition of property by a public utility vested with the power of eminent domain for a public project receiving federal financial assistance, whether by negotiation or formal condemnation proceedings, constitutes an exercise of the power of eminent domain subject to the provisions of 63 O.S. 1085-1099 [63-1085-1099]. It is the opinion of the Attorney General that your fourth question be answered as follows: The State of Oklahoma may delegate the power of eminent domain to public utility companies. Where the power of eminent domain is exercised by a public utility company in acquiring real property for a public project receiving federal financial assistance, such companies are subject to the provisions of 63 O.S. 1085 [63-1085] through 1099. (Steven E. Moore)